**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:24-cv-22045-GAYLES**

**STEPHEN BELAFONTE,**

      **Plaintiff,**

**v.**

**MELANIE JANINE BROWN,**

      **Defendant.**

_____/

**<u>DEFENDANT MELANIE BROWN'S MOTION FOR SANCTIONS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

LEGAL STANDARD ...........................................................................................................6

ARGUMENT .......................................................................................................................6

I.     BELAFONTE'S ASSERTED BASIS FOR PERSONAL JURISDICTION IS BOTH LEGALLY FRIVOLOUS AND PREDICATED ON A KNOWINGLY FALSE ALLEGATION OF FACT ............................................................................6

     A.     Belafonte's Asserted Basis For Personal Jurisdiction Would Violate Clearly Established Due Process Principles............................................7

     B.     Belafonte's Jurisdictional Theory Is Tied Together By A Knowingly False Factual Allegation .............................................................................10

II.     THE VAST MAJORITY OF ALLEGEDLY DEFAMATORY STATEMENTS ARE TIME-BARRED ................................................................................................11

III.     BELAFONTE'S ATTEMPT TO IMPOSE AN UNCONSTITUTIONAL PRIOR RESTRAINT ON BROWN IS FRIVOLOUS ................................................13

IV.     BELAFONTE AND HIS COUNSEL SHOULD BE SANCTIONED UNDER RULE 11(C) .......................................................................................................15

CONCLUSION....................................................................................................................16

i

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ..........................................................................................................15

*Alexander v. United States,*
   509 U.S. 544 (1993) ..........................................................................................................13

*Ashraf v. Adventist Health Sys./Sunbelt, Inc.,*
   200 So. 3d 173 (Fla. 5th DCA 2016) ................................................................................12

*Baker v. Joseph,*
   938 F. Supp. 2d 1265 (S.D. Fla. 2013) ..........................................................................2, 14

*Bantam Books, Inc. v. Sullivan,*
   372 U.S. 58 (1963) ............................................................................................................14

*Basulto v. Netflix, Inc.,*
   No. 22-cv-21796, 2023 WL 4014741 (S.D. Fla. May 25, 2023) .........................................9

*Basulto v. Netflix, Inc.,*
   No. 22-cv-21796, 2023 WL 7129970 (S.D. Fla. Sept. 20, 2023) ......................................14

*Calder v. Jones,*
   465 U.S. 783 (1984) ........................................................................................................7, 8

*Carroll v. President & Comm'rs of Princess Anne,*
   393 U.S. 175 (1968) ..........................................................................................................15

*Demby v. English,*
   667 So. 2d 350 (Fla. 1st DCA 1995) ..............................................................................3, 14

*Donaldson v. Clark,*
   819 F.2d 1551 (11th Cir. 1987)..........................................................................................16

*Grayson v. No Labels, Inc.,*
   No. 6:20-cv-1824, 2023 WL 2919911 (M.D. Fla. Jan. 17, 2023) ......................................14

*Kenne v. Stennis,*
   179 Cal. Rptr. 3d 198 (Cal. Ct. App. 2014)........................................................................13

*Louis Vuitton Malletier, S.A. v. Mosseri,*
   736 F.3d 1339 (11th Cir. 2013).............................................................................................7

*Madara v. Hall,*
   916 F.2d 1510 (11th Cir. 1990).......................................................................................9, 10

*Malhotra v. Aggarwal*,
  No. 1:17-24407, 2019 WL 3425161 (S.D. Fla. July 30, 2019) ...........................................11

*Markle v. Markle*,
  No. 8:22-cv-511, 2023 WL 2711341 (M.D. Fla. Mar. 30, 2023) ........................................13

*McCall v. Zotos*,
  No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023).................................... 2, 7, 8, 9

*Near v. Minnesota ex rel. Olson*,
  283 U.S. 697 (1931) ............................................................................................................2

*Neb. Press Ass'n v. Stuart*,
  427 U.S. 539 (1976) ..........................................................................................................14

*Norkin v. The Fla. Bar*,
  311 F. Supp. 3d 1299 (S.D. Fla. 2018).........................................................................2, 11

*Rogers v. Nacchio*,
  No. 05–60667–CIV, 2006 WL 7997562 (S.D. Fla. June 6, 2006) .................................. 10, 11

*Sovereign Offshore Servs., LLC v. Shames*,
  No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ...........................................9

*Swedberg v. Goldfinger's S., Inc.*,
  338 So. 3d 332 (Fla. 3d DCA 2022) ..................................................................................12

*Tory v. Cochran*,
  544 U.S. 734 (2005) ..........................................................................................................15

*Trump v. Clinton*,
  640 F. Supp. 3d 1321 (S.D. Fla. 2022)............................................................... 6, 12, 15, 16

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018)..........................................................................................13

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................................8

*Watkins v. Bigwood*,
  797 F. App'x 438 (11th Cir. 2019) .....................................................................................11

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015)..........................................................................................13

*Worldwide Primates, Inc. v. McGreal*,
  87 F.3d 1252 (11th Cir. 1996) .............................................................................................6

## **Statutes and Rules**

Fed. R. Civ. P. 11 ............................................................................................. 2, 6, 11, 15

Fla. Stat. § 95.11(5)(h) ............................................................................................... 5, 11

## **Other Authorities**

Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev.
    157(2007)..................................................................................................................14

Defendant Melanie Brown respectfully seeks an order sanctioning Plaintiff Stephen Belafonte and his counsel pursuant to Rule 11(c) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Stephen Belafonte should be sanctioned under Rule 11(c) for his blatant abuse of judicial process in filing this action, which lacks any colorable basis in fact or law.  In 2007, Belafonte married Melanie Brown—better known as "Mel B" of the iconic pop group the Spice Girls—who endured Belafonte's physical and emotional abuse during their tumultuous decade-long marriage. Brown eventually escaped Belafonte's all-encompassing grip on her life with the help of the courts. And after the couple divorced in 2017, Brown devoted herself to protecting vulnerable women around the globe using the most powerful tool available to her—the same one that made her a star—her voice.

Displeased with Brown's exercise of her constitutionally protected freedoms, Belafonte filed this baseless SLAPP suit to litigate plainly time-barred matters in a foreign forum that lacks personal jurisdiction over Brown.  And as if that were not bad enough, Belafonte reveals his bad faith by asking the Court to enter a flagrantly unconstitutional injunction that would prevent Brown from *ever* speaking publicly about her memoir or Belafonte *for the rest of her life*.  Although dismissal is both warranted and necessary, the only medicine strong enough for this vexatious lawsuit is an order sanctioning Belafonte and his counsel.  The Court should invoke its Rule 11 authority to enter such an order for three reasons.

*First*, Belafonte's allegations in support of the exercise of personal jurisdiction over Brown, a citizen of the United Kingdom, are patently deficient under settled law.  The events underlying Brown's statements did not occur in Florida.  Belafonte's career and reputation are not centered in Florida.  And Belafonte does not allege that Brown made a single one of the allegedly defamatory statements in Florida.  Belafonte instead asserts that he may force Brown to litigate in

1

Florida on the ground that her allegedly defamatory statements are "accessible" in Florida.  (ECF 1 ¶ 26.)  But the Eleventh Circuit has foreclosed exactly that theory.  *See, e.g.*, *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023) (in defamation case, "[s]omething more than posting online and accessibility from the forum is required" (alterations adopted) (citations omitted)).  Even worse, the centerpiece of Belafonte's legally frivolous jurisdictional theory is a factually frivolous allegation: although Belafonte alleges that he "was a resident and citizen of the State of Florida" "[a]t the time of the publication of the defamatory statements and communications set forth in th[e] Complaint" (ECF 1 ¶ 23)—including statements dating back to 2017—he in fact resided in California until *July 2023*, when, as was widely reported in popular media, Belafonte first obtained judicial approval to move to Florida.

*Second*, nearly all of the statements that Belafonte alleges were defamatory are time-barred. Belafonte filed this suit on May 29, 2024.  Florida has a two-year statute of limitations for defamation actions that runs from "the date of publication."  *Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018).  But an extensive majority of the statements Belafonte alleges were defamatory occurred well outside the limitations period, some as early as 2017.  So on any conceivable application of the statute, Belafonte's Complaint is rife with obviously time-barred contentions not "warranted by existing law."  Fed. R. Civ. P. 11(b)(2).

*Third*, the injunctive relief that Belafonte requests would be an overtly unconstitutional prior restraint on speech.  The First Amendment's prohibition on prior restraints has long been hornbook constitutional law.  *See, e.g.*, *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 733–35 (1931).  Courts accordingly adhere to the "well-settled rule prohibiting injunctive relief in defamation cases," *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1270 (S.D. Fla. 2013)—a rule so "well-settled," *id.*, that violations of it are not just meritless, but "***frivolous***," *Demby v. English*, 667 So.

2d 350, 355 (Fla. 1st DCA 1995) (emphasis added) (ordering trial court to sanction party who requested injunction as relief for defamation claim).  Belafonte cannot misappropriate this Court's equitable powers to violate the constitutional principles it exists to protect.  His unlawful attempt to silence Brown—through baseless jurisdictional and legal routes, no less—presents exactly the scenario that Rule 11 was designed to address.

## BACKGROUND

Brown—better known as "Mel B" or "Scary Spice"—is a member of the world-famous pop group the Spice Girls, the best-selling all-female musical group of all-time. (ECF 1 ¶ 32.)  In addition to her pathbreaking musical career, Brown has won accolades for her work advocating for domestic abuse victims.  She is a patron of Women's Aid, a charity that works to promote equal rights for women and eliminate sex-based violence and discrimination.  (*Id.* ¶ 12.)  In 2018, Prince William appointed Brown to the Most Excellent Order of the British Empire for her charitable contributions and efforts to protect vulnerable women.  (*Id.*)

Belafonte is a world-famous television and film producer, director, and talent manager.[1]  (*Id.* ¶ 31.)  Brown and Belafonte were married from 2007 to 2017.[2]  They permanently resided in

---

[1]  Belafonte alleges that he is not a public figure.  (ECF 1 ¶ 9.)  That is false.  As just one example, according to a biography of Belafonte published on a webpage titled "The Famous People," Belafonte has produced several well-known films and appeared as himself in some of the most popular television shows in the world, including "Dancing with the Stars" and "The X Factor."  *Stephen Belafonte*, The Famous People, https://www.thefamouspeople.com/profiles/stephen-belafonte-43285.php (accessed July 14, 2024).

[2]   Before his marriage to Brown, Belafonte dated, and fathered a child with, model Nicole Contreras.  *See* Naveen Rao, *Stephen Belafonte's Wiki: Mel B's Ex-Husband is a Rich Man after Divorce Settlement*, Earn The Necklace (Mar. 21, 2017), https://www.earnthenecklace.com/stephen-belafonte-wiki-parents-net-worth-facts-know-mel-b-s-husband/.  Belafonte was charged with battery and vandalism after beating Contreras at their home, leading to an intervention by armed law enforcement.  *See* Christopher Bucktin, *Exclusive: Mel B finds an ally in estranged ex-husband's battered ex-girlfriend who says she lived in fear of "monster,"* The Daily Mirror (Apr. 8, 2017), https://www.mirror.co.uk/3am/celebrity-news/mel-

3

the Los Angeles, California, area throughout their marriage.  Upon filing for divorce in 2017, Brown sought and obtained a domestic-violence temporary restraining order against Belafonte from the Los Angeles County Superior Court.  Although Belafonte now blames Brown's "celebrity status" for the publicity surrounding Brown's request for a restraining order (ECF 1 ¶ 54), he actively fought to unseal the parties' filings in the case and to keep the courtroom open for the hearing on the restraining order, both over Brown's opposition.  The court later withdrew the restraining order upon the parties' settlement.  In 2018, Brown sought and obtained another domestic violence restraining order against Belafonte.

After their divorce, Brown dedicated herself to speaking out against domestic violence and supporting organizations and causes that do the same.  Brown's advocacy sometimes entailed discussing her lived experiences as a survivor of abuse, as well as her views and opinions on issues affecting domestic violence survivors.  Her ardent efforts to improve the lives of battered women resulted in the filing of this lawsuit.  On May 29, 2024, Belafonte brought this suit asserting three causes of action: defamation per se (Count I), defamation by implication (Count II), and intentional infliction of emotional distress (Count III).

Belafonte contends that this Court has personal jurisdiction over Brown, a United Kingdom citizen, based largely on his allegation that, "*[a]t the time of the publication of the defamatory statements and communications set forth in this Complaint*, Mr. Belafonte was a resident and citizen of the State of Florida."  (*Id.* ¶ 23 (emphasis added).)  That is verifiably false.  In fact, as has been widely reported, Belafonte was a resident and citizen of California until July 2023, when

---

b-forms-unlikely-alliance-10184922.  Belafonte pleaded "no contest" to the battery charge and stated that he was "confused and stressed" when he beat her.  *See id.*  On information and belief, Belafonte has never sued Contreras for defamation.  Belafonte has also faced charges related to receipt of stolen property, killing a mallard, and fighting in public.  *See* Rao, *supra*.

he obtained court permission to move from California to Florida with the couple's daughter.  *Mel B's Ex-Husband Taking Daughter and Permanently Moving to Miami*, y!entertainment (July 11, 2023),           https://www.yahoo.com/entertainment/mel-b-ex-husband-taking-161105829.html. Belafonte does not allege that Brown made any of the allegedly defamatory statements in Florida or otherwise targeted Florida; according to him, the fact that an unspecified number of the alleged statements "were accessible" in Florida is enough to force Brown to litigate in Belafonte's home district across the Atlantic Ocean.  (ECF 1 ¶ 26.)

Belafonte compounds his false jurisdictional allegations with equally frivolous allegations of liability. Florida's statute of limitations for defamation actions is two years.  Fla. Stat. § 95.11(5)(h).  That did not deter Belafonte.  The Complaint sets out 78 statements by Brown that Belafonte alleges were defamatory.  (*See* ECF 1 ¶¶ 51, 53a, 55, 59, 63a, 63b, 63c, 63d, 63e, 63f, 63g, 63h, 63i, 63j, 63k, 63l, 63m, 63n, 63o, 63p, 63q, 63r, 63s, 63t, 63u, 63v, 63w, 63x, 63y, 64a.i, 64a.ii, 64a.iii, 64a.iv, 64b.i, 64b.ii, 64c.i, 64c.ii, 64d.i, 64d.ii, 64d.iii, 64d.iv, 64d.v, 64e.i, 64e.ii, 64f.i, 64f.ii, 64g.i, 64g.ii, 64g.iii, 64h.i, 64h.ii, 64h.iii, 64i.i, 64i.ii, 64j.i, 64j.ii, 64k.i, 64k.ii, 64l.i, 64l.ii, 64l.iii, 64m.i, 64m.ii, 64n.i, 64o.i, 64o.ii, 64o.iii, 64o.iv, 64o.v, 64o.vi, 64p.i, 64p.ii, 64q.i, 64r.i, 64s.i, 64ti, 64t.ii, 64t.iii.)  ***Nearly three-quarters*** of those alleged statements occurred more than two years before the Complaint's filing—some as early as 2017, and some contained in Brown's memoir, *Brutally Honest*, which was originally published in 2018.  (*Id.* ¶¶ 63, 64k–64t.) The Complaint's list of allegedly defamatory statements also includes statements from Brown's divorce filings in California (*id.* ¶¶ 51-53); Brown's commentary on Johnny Depp's defamation trial against Amber Heard (*id.* ¶ 64j.i); Brown's statements about her state of mind, including: "I was really happy to go to work because that was my safe place" (*id.¶* 64g.ii); and a photograph and articles published by The Daily Mail and Newsweek—not Brown (*id.* ¶¶ 59-62, 64j.ii).

In addition to seeking damages in the amount of $5 million, Belafonte seeks a permanent injunction prohibiting Brown "from speaking about *Brutally Honest* or Mr. Belafonte in any public appearances and interviews." (*Id.* ¶ 106d.)  He further seeks to restrain Brown and unnamed non-parties "from publishing any further defamatory statements concerning Belafonte," as well as a mandatory injunction compelling Brown to "restore" his reputation.  (*Id.* ¶ 106c, 106e.)

**LEGAL STANDARD**

"The central purpose of Rule 11 is to deter baseless filings in the district court." *Trump v. Clinton*, 640 F. Supp. 3d 1321, 1333 (S.D. Fla. 2022) (alterations adopted) (citation and internal quotation marks omitted).  "Rule 11 sanctions are proper '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith or for an improper purpose.'" *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)); *see* Fed. R. Civ. P. 11(b).

**ARGUMENT**

**I.    BELAFONTE'S ASSERTED BASIS FOR PERSONAL JURISDICTION IS BOTH LEGALLY FRIVOLOUS AND PREDICATED ON A KNOWINGLY FALSE ALLEGATION OF FACT**

Belafonte's claimed basis for exercising personal jurisdiction over Brown would offend long-settled due process protections and is predicated entirely on the false pretense that Belafonte was a citizen of Florida between 2017 and 2023.  His frivolous contentions of both fact and law are precisely the sort that Rule 11 exists to deter.

6

A.      **Belafonte's Asserted Basis For Personal Jurisdiction Would Violate Clearly Established Due Process Principles**

For a Florida court to "exert personal jurisdiction over a nonresident defendant" consistently with the Due Process Clause, that defendant must, among other things, have "'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws." *McCall*, 2023 WL 3946827, at *3–4. "In *intentional* tort cases" like this one, "there are two applicable tests for determining whether purposeful availment occurred." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). The first is "the 'effects' test, which the Supreme Court articulated in *Calder v. Jones*, 465 U.S. 783 (1984)," a defamation case. *Louis Vuitton*, 736 F.3d at 1356. "The [*Calder* effects] test is met when the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *McCall*, 2023 WL 3946827, at *4. The second is the "traditional minimum contacts test." *Louis Vuitton*, 736 F.3d at 1356.

Belafonte's allegations fall well short of the constitutional minimum no matter which of the two "purposeful availment" tests applies. Begin with the effects test. *Calder* applied the test to a California-centered defamation lawsuit filed in California state court. 465 U.S. at 784–85. The case involved an allegedly libelous magazine article concerning the activities of an entertainer who resided in California. *Id.* at 788–89. The article, which was drawn from California sources, questioned the professionalism of the entertainer, who allegedly suffered damages—consisting of both emotional distress and injury to her professional reputation—almost exclusively in California. *Id.* She then sued Florida-based defendants for defamation in California. *Id.* at 785–86. On review, the Supreme Court proceeded from the starting point that "[t]he mere fact that [a defendant] can 'foresee' that an article will be circulated and have an effect in [the forum] is not

sufficient for an assertion of jurisdiction." *Id.* at 789; *see Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."). From there, the Court held that due process permitted the suit to move forward in California, reasoning that because the defendants "expressly aimed" the article at California and knew that the brunt of any injury would be suffered there, they could reasonably have expected to be haled into a California court. *Calder,* 465 U.S. at 788–90.

As *Calder* itself demonstrates, Belafonte's jurisdictional allegations are nowhere near adequate. Belafonte does not allege that Brown made any of the alleged statements in Florida— or that she set foot in Florida at all. Nor does he allege that Brown "expressly aimed" those statements at Florida. *Id.* at 789. Nor does he allege that any of the events underlying the statements occurred in Florida. He alleges only that Brown authored a widely disseminated memoir and made statements during public appearances (none of which he alleges took place in Florida). According to Belafonte, it is enough that Brown knew her statements "would be viewed by millions of people *throughout the world, including* in the State of Florida" because those statements "were accessible on network television and the Internet in the state of Florida." (ECF 1 ¶¶ 25–26 (emphasis added).)

The Eleventh Circuit recently rejected that precise theory of personal jurisdiction in a defamation case. In *McCall v. Zotos*, the Eleventh Circuit held that it was not enough that "the alleged harm … was felt across the United States" and that "[p]osting information on the internet 'is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed"; rather, "[s]omething more than posting online and accessibility in the forum is required." 2023 WL 3946827, at *4 (alterations adopted) (citations omitted). The court accordingly held that "allegations that [an allegedly defamatory statement] was accessible and

accessed in Florida and that [plaintiffs] resided in Florida are not sufficient to confer personal jurisdiction." *Id.* at *5; *see also Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web, and [plaintiff's] physical location in Florida are insufficient to establish that Defendant has minimum contacts with Florida.").

Although the same principle precludes Belafonte's asserted basis for jurisdiction here, this case is even more straightforward than *McCall*: The defendant in *McCall actually posted* an allegedly defamatory review online. 2023 WL 3946827, at *1. Here, by contrast, Belafonte does not allege that Brown posted *any* of the statements from her public appearances, much less that she controlled their distribution.

Any argument that Belafonte's allegations satisfy the second "purposeful availment" test—the traditional "minimum contacts" standard—would be even more baseless. For Belafonte to establish that Brown purposefully availed herself of the privilege of doing business in Florida, he would need to allege that she "continuously and deliberately exploited the market of the forum." *Madara v. Hall*, 916 F.2d 1510, 1518 (11th Cir. 1990); *see also Basulto v. Netflix, Inc.*, No. 22-21796-Civ, 2023 WL 4014741, at *13 (S.D. Fla. May 25, 2023) (reaffirming that mere awareness that a statement will enter the forum state is not sufficient for personal jurisdiction), *report and recommendation adopted*, 2023 WL 5271335 (S.D. Fla. Aug. 16, 2023). Belafonte's allegations do not even come close. He does not allege that Brown made any of the allegedly defamatory statements in Florida or that she promoted her memoir or other statements in Florida—let alone that she did so "continuously and deliberately." *Madara*, 916 F.2d at 1518. It is also significant that Brown "was not the … publisher" of internet articles or television appearances referencing or

portraying her statements and thus "did not control [their] circulation and distribution." *Id.* at 1519.

In brief, none of Belafonte's allegations (even if assumed true) could conceivably yield the conclusion that suing Brown in Florida is consistent with established due process principles. *See, e.g.*, *Rogers v. Nacchio*, No. 05-60667-CIV, 2006 WL 7997562, at *19–20 (S.D. Fla. June 6, 2006) (sanctioning plaintiff under Rule 11 for frivolous personal jurisdiction contention).

## B.   Belafonte's Jurisdictional Theory Is Tied Together By A Knowingly False Factual Allegation

Belafonte combines these frivolous legal errors with outright lies, in open violation of his counsel's Rule 11 obligations. As described, Belafonte alleges that Brown has continuously defamed him dating back to 2017. *See* p. 5, *supra*. From the time of his divorce from Brown in 2017 until just last year, Belafonte permanently resided in (and was a citizen of) California—as confirmed by widespread reporting that Belafonte obtained court approval to move from California to Florida with his daughter in July 2023. *See* p. 4, *supra*. Yet Belafonte alleges that "[a]t the time of the defamatory statements and communications set forth in this Complaint"—that is, at the time of *all* the alleged statements—he "was a resident and citizen of the State of Florida."[3] (ECF 1 ¶ 23.)

There is no excuse for Belafonte's deliberate lie. His allegation that he was a citizen of Florida from 2017 to 2023 plainly cannot be squared with his counsel's certification that the Complaint's "factual contentions have evidentiary support or, if specifically so identified, will

---

[3]   The implications of this lie are noteworthy. Belafonte's jurisdictional theory is legally unviable as it stands, and that fact alone warrants sanctions. But Belafonte did not stop there. If his asserted basis for personal jurisdiction hangs by even a single thread, it is his allegation that he is and was a Florida citizen at the time of *all* of the allegedly defamatory statements. Yet *even that central claim is false*. And as goes that thread, so goes Belafonte's entire basis for initiating suit in this district.

likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Nor could his counsel's "inquiry [have been] reasonable under the circumstances": the allegation is refutable by a simple Google search, as well as by a cursory scan of the parties' divorce case docket. Fed. R. Civ. P. 11(b). Even if Belafonte's counsel did not actually know their client's state of citizenship over the past seven years, their ready access to information that would have disproven their false jurisdictional contention makes that contention a quintessential Rule 11 violation. *See Rogers*, 2006 WL 7997562, at \*19–20 (sanctioning plaintiff for advancing frivolous personal jurisdiction contention despite having easy access to facts demonstrating that defendant lacked minimum contacts with the forum).

## II.   THE VAST MAJORITY OF ALLEGEDLY DEFAMATORY STATEMENTS ARE TIME-BARRED

Florida has a two-year statute of limitations for defamation claims. *Watkins v. Bigwood*, 797 F. App'x 438, 444 (11th Cir. 2019); *see also* Fla. Stat. § 95.11(5)(h). "The limitations period begins running from the time the cause of action accrues." *Norkin*, 311 F. Supp. 3d at 1304. A cause of action for defamation accrues "on the date of publication, not the date of discovery." *Id.* In other words, "defamation suits must be brought in a two-year period *from first publication*," *Malhotra v. Aggarwal*, No. 1:17-24407, 2019 WL 3425161, at \*3 (S.D. Fla. July 30, 2019) (emphasis added), and the fact that a statement "remain[s] publicly available does nothing to toll the limitations period." *Watkins*, 797 F. App'x at 444.

Belafonte cites dozens of alleged statements by Brown that he alleges were defamatory— nearly all of which were allegedly made more than two years before Belafonte filed this action on May 29, 2024. *See supra*, p. 5. Because the statute of limitations runs from the time of a statement's first publication, *Malhotra*, 2019 WL 3425161, at \*3, each of those many statements is time-barred. The time bar applies especially clearly to Belafonte's defamation by implication

claim (Count II), which Belafonte expressly bases on statements that he alleges were published in 2018 and December 2021, respectively.  (ECF 1 ¶¶ 59, 63y, 98–99.)  That claim is entirely foreclosed under any straightforward reading of Florida law, and Belafonte's baseless attempt to recover for transparently time-barred statements merits sanction.  *See, e.g.*, *Trump*, 640 F. Supp. 3d at 1331–32 (sanctioning plaintiff because, among other reasons, "[a]lmost all of the statements" underlying a claim for injurious falsehood "were barred by Florida's two-year statute of limitations").

Belafonte attempts to circumvent this clear-cut analysis with creative pleading, but Florida law plainly forecloses Belafonte's theory.  On Belafonte's telling, he may sue for statements contained in Brown's memoir, *Brutally Honest*, because it was re-published in paperback form in 2024 after its initial publication in 2018.  That theory fails.  Florida's single-publication rule "provides that a 'cause of action for damages founded upon a single publication or exhibition or utterance … shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in this state.'"  *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 175 (Fla. 5th DCA 2016).  Designed to alleviate the "obvious problems … presented by a rule of law that would view the sale of each copy of a newspaper or book as a separate tort," *Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332, 335 (Fla. 3d DCA 2022), the single-publication rule flatly bars Belafonte's attempt to shoehorn untimely allegations into the limitations period.  That much is clear from the paperback version's copyright page, which states that the book was "first published in 2018" and that the text remains "[copyright] Melanie Brown 2018"—in essence, that the paperback edition amounts simply to "continued dissemination" of the same material as the 2018 book.  *Swedberg*, 338 So. 3d at 335.  That fact fully explains Belafonte's telling failure to

allege that the paperback edition contains *any* new or different statements about him—statements he has known about, but not sued on, since 2018.

The Complaint is also littered with statements that are otherwise non-actionable under any reasonable application of existing law.  Take the Complaint's allegations that Brown defamed Belafonte in her application for a temporary restraining order in California.  (ECF 1 ¶¶ 51–53.) Recovery for those statements is plainly barred by the litigation privilege.  *See, e.g.*, *Kenne v. Stennis*, 179 Cal. Rptr. 3d 198, 212–15 (Cal. Ct. App. 2014).  Belafonte also alleges that Brown's commentary on a highly publicized defamation trial and statements that she "was really happy to go to work because that was my safe place" were defamatory.  (ECF 1 ¶¶ 64j.i, 64g.ii.)  Recovery for those statements of pure opinion is barred by the First Amendment.  *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).  Or consider Belafonte's allegations that images of Brown published by the Daily Mail and an article published about Brown's memoir by Newsweek were defamatory. (ECF 1 ¶¶ 59-62, 64j.ii.)  Those statements are not actionable because Brown did not publish them. *See Markle v. Markle*, No. 8:22-cv-511, 2023 WL 2711341, at *5–7 (M.D. Fla. Mar. 30, 2023).[4] The Court should not condone Belafonte's complete disregard for the black-letter law that bars his claims.

## III.  BELAFONTE'S ATTEMPT TO IMPOSE AN UNCONSTITUTIONAL PRIOR RESTRAINT ON BROWN IS FRIVOLOUS

A prior restraint is an administrative or judicial order—like an injunction—that forbids "certain communications when issued in advance of the time that such communications are to occur."  *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, *Nimmer on*

---

[4] The Complaint is also an impermissible "shotgun pleading" that violates clearly established Eleventh Circuit law.  *See, e.g.*, *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1319–23 & nn.11–12 (11th Cir. 2015).

*Freedom of Speech* § 4.03 (1984)).  "[P]ermanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."  *Id.*  A prior restraint bears "a heavy presumption against its constitutional validity" because it implicates expression protected by the First Amendment.  *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963).  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

To safeguard these fundamental freedoms, courts follow the "well-settled rule prohibiting injunctive relief in defamation cases."  *Baker*, 938 F. Supp. 2d at 1270.  Indeed, courts "typically refuse to grant permanent injunctions regarding speech *in any circumstance, even where liability for defamation is found*."  *Basulto v. Netflix, Inc.*, No. 22-cv-21796, 2023 WL 7129970, at *51 (S.D. Fla. Sept. 20, 2023) (emphasis in original); *see also Grayson v. No Labels, Inc.*, No. 6:20-cv-1824, 2023 WL 2919911, at *5 (M.D. Fla. Jan. 17, 2023) ("It is a 'well established rule that equity will not enjoin either an actual or a threatened defamation." (citation omitted)), *report and recommendation adopted*, 2023 WL 2706733 (M.D. Fla. Mar. 30, 2023).  That practice follows directly from the First Amendment's command.  Injunctions in defamation actions "inevitably put the court in the classic role of the censor and are intolerable under the First Amendment."  Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157, 172 (2007).  Florida courts accordingly recognize that "claim[s] for injunctive relief" in defamation cases are not just wrong, but "*frivolous*."  *Demby*, 667 So. 2d at 355 (emphasis added) (reversing with instructions to sanction plaintiff for requesting injunction in defamation case).

As these established principles dictate, Belafonte's demand for injunctive relief lacks even colorable justification.  Even generously assuming that an injunction in a defamation case could *ever* be justified, Belafonte's requested injunctions are grossly overbroad.  Belafonte does not seek

14

to enjoin only statements that could be found defamatory "by either a judge or jury." *Basulto*, 2023 WL 7129970, at *52. Belafonte instead seeks a dragnet *permanent* restraint prohibiting Brown from saying *anything* about her memoir or Belafonte *ever again*. (ECF 1 ¶ 106d.) That boundless request is anything but "precis[e]" or "couched in the narrowest terms to accomplish the pin-pointed objective permitted by constitutional mandate," *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968), and it plainly "amounts to an overly broad prior restraint upon speech, lacking plausible justification," *Tory v. Cochran*, 544 U.S. 734, 738 (2005).[5] The Court should sanction Belafonte and his counsel for seeking relief that has no colorable basis in law.

## IV.   BELAFONTE AND HIS COUNSEL SHOULD BE SANCTIONED UNDER RULE 11(C)

Sanctions for violations of Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* Any sanction "must give effect to the rule's central goal of deterrence." *Trump*, 640 F. Supp. 3d at 1333 (quoting *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990)). "Imposing a

---

[5]   Belafonte multiplies the unconstitutionality of his demand with an equally baseless request that the Court force Brown to "restore" his reputation (ECF 1 ¶ 106e)—in open violation of the compelled-speech doctrine. *303 Creative, LLC v. Elenis*, 600 U.S. 570, 586 (2023) ("[T]he government may not compel a person to speak its own preferred messages. Nor does it matter whether the government seeks to compel a person to speak its message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include." (collecting cases) (citations omitted)).

financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits." *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987) (en banc).

Given the text and purpose of Rule 11, the appropriate sanction here is an order requiring Belafonte and his counsel to pay Brown's attorney's fees and costs for filing this motion and otherwise defending against this baseless suit. *See id.* (noting that "the sanctions most commonly imposed" for Rule 11 violations "are costs and attorneys' fees"). That sanction would properly account for the "effect [the violation] had on the litigation process in time or expense" and would help "to deter repetition of the conduct or comparable conduct by similarly situated persons." *Trump*, 640 F. Supp. 3d at 1333; *see id.* (listing factors courts consider in determining an appropriate sanction, including "[w]hether [the violation] affected the entire pleading, or only one particular count or defense"). The Court should also order any other sanction it considers warranted.

## CONCLUSION

Brown respectfully requests that her motion for sanctions be granted under Federal Rule of Civil Procedure 11(c). The Court should order Belafonte and his counsel to pay the costs and attorney's fees that Brown expended in filing this motion and defending against this suit and any other sanction the Court determines is appropriate.

16

## CERTIFICATE OF PRE-FILING CONFERENCE

In accordance with Federal Rule of Civil Procedure 11(c)(2) and Local Rule 7.1(a)(3), undersigned counsel served a copy of this Motion on Mr. Belafonte's counsel on July 19, 2024, requested that Mr. Belafonte dismiss this action, and stated that undersigned counsel were available to meet and confer once Mr. Belafonte's counsel had an opportunity to review the Motion.  On August 9, 2024, the final day of the Rule 11(c)(2) safe harbor period, undersigned counsel received correspondence from Mr. Belafonte's counsel stating that Mr. Belafonte would not dismiss the action.  Mr. Belafonte has not dismissed the action or withdrawn any of the allegations or contentions discussed in this Motion.

DATED:  August 12, 2024          Respectfully submitted,


QUINN EMANUEL URQUHART & SULLIVAN LLP

By  */s/ Jason D. Sternberg*
Jason D. Sternberg

William A. Burck (*pro hac vice* pending)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
1300 I Street, N.W., Suite 900
Washington, D.C. 20005
(202) 538-8334
williamburck@quinnemanuel.com

Jason D. Sternberg (Fla. Bar No. 72887)
David A. Nabors (Fla. Bar No. 1024722)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
jasonsternberg@quinnemanuel.com
davidnabors@quinnemanuel.com
Secondary:  olgagarcia@quinnemanuel.com
(305) 439-5008

*Counsel for Defendant Melanie Brown*

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of August, 2024, a true and correct copy of the

foregoing document was electronically transmitted to all counsel of record via the CM/ECF

system.

By: */s/ Jason D. Sternberg*
Jason D. Sternberg
Florida Bar No. 72887
jasonsternberg@quinnemanuel.com

18