UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-22045-DPG

**STEPHEN BELAFONTE**,

    **Plaintiff,**

vs.

**MELANIE JANINE BROWN,**

    **Defendant.**
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................................... 3

LEGAL STANDARD ...................................................................................................................... 6

ARGUMENT ................................................................................................................................... 7

    I.    THE 2024 PUBLICATION OF *BRUTALLY HONEST* TRIGGERED A NEW CAUSE OF ACTION AND CORRESPONDING LIMITATIONS PERIOD ........................................ 7

    II.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ................... 10

    III.   INJUNCTIVE RELIEF IS PROPER WHERE A JUDGMENT FOR MONETARY DAMAGES WOULD NOT AFFORD EFFECTIVE RELIEF FROM A CONTINUING PATTERN OF DEFAMATION ........................................................................................ 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**
*Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463 (S.D. Fla. 2020) .................................. 6, 13
*Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173 (Fla. 5th DCA 2016) ..................... 2
*Bigford v. BESM, Inc.,* 2012 WL 12886184 (S.D. Fla. Oct. 12, 2012) .......................................... 6
*Calder v. Jones*, 465 U.S. 783 (1984)............................................................................................ 11
*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)............................................................................. 6
*Corsi v. Newsmax Media, Inc.*, 519 F.Supp.3d 1110 (S.D. Fla. 2021)............................................ 5
*Davis v. Carl*, 9106 F.2d 533, 538 (11th Cir. 1990)....................................................................... 6
*Deligdish v. Bender*, No. 6:23-cv-417, 2023 WL 5016547 (M.D. Fla. Aug. 7, 2023)................. 14
*Epic Metals Corp. v. CONDEC, Inc.*, 867 F.Supp. 1009 (M.D. Fla. 1994) .................................. 9
*Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010)...................................................... 11
*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)............................................................... 12
*Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*, 827 F.2d 1454 (11th Cir. 1987).................................................................................................. 14
*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013).................................. 11
*Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990)................................................................... 12, 13
*McCall v. Zotos*, No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023) ........................... 12
*Purchasing Power, LLC v. Bluestem Brands., Inc.*, 851 F.3d 1218 (11th Cir. 2017) ................... 6
*Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.S.2d 422 (1981) ........................................................... 10
*Smith v. Cuban American Nat. Foundation*, 657 So.2d 86 (1995).............................................. 11
*Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253 (11th Cir. 2014) ........................................... 7
*Sovereign Offshore Servs., LLC v. Shames,* No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ....................................................................................................................... 12
*Spadaro v. City of Miramar*, 855 F.Supp.2d 1317 (S.D. Fla. 2012).............................................. 4
*Stone v. Shafran*, 641 F.Supp.3d 1344 (S.D. Fla. 2022).............................................................. 12
*Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d (Fla. 3d DCA 2022).......................................... 2, 8
*Ward v. Triple Canopy, Inc.*, 2017 WL 3149431 (M.D. Fla. Jul. 25, 2017) ............................... 14
*Wentz v. Project Veritas*, 2018 WL 11252110 (M.D. Fla. Jan. 31, 2008).................................... 14

**Statutes**
28 U.S.C. § 1927................................................................................................................. 3, 7, 13
Fla. Stat. § 48.193 ......................................................................................................................... 10
Fla. Stat. § 48.193(1)(b) ................................................................................................................ 11
Fla. Stat. § 770.05 ........................................................................................................................... 8
Fla. Stat. § 770.07 ........................................................................................................................... 8

**Federal Rules**
Fed. R. Civ. P. 11(b)(2)................................................................................................................. 14
Fed. R. Civ. P. 11(c)(2)................................................................................................................... 3
Fed. R. Civ. P. 12(b)(2)................................................................................................................. 13

**Secondary Authorities**
Restatement (Second) of Torts § 577A cmt. d................................................................................ 9

Plaintiff Stephen Belafonte ("Plaintiff" or "Belafonte"), by and through undersigned counsel, respectfully submits the instant memorandum of law in opposition to Defendant Melanie Brown's ("Defendant" or "Brown") Motion for Sanctions pursuant to Rule 11(c) of the Federal Rules of Civil Procedure (the "Motion").

## INTRODUCTION

Not only is Defendant's Motion an improper exploitation of Rule 11, but it is also ridden with frivolous arguments and egregious accusations. Not a single one of the arguments advanced in Defendant's Motion is meritorious. Rather, the Motion is a vexatious tactic calculated to increase the costs of this litigation and waste the Court's limited and valuable judicial resources.



Much of Defendant's motion conveniently elides the fact that a new and expanded edition of Ms. Brown's book, *Brutally Honest: The Sunday Times Bestseller*, was published on March 8, 2024. ECF 1, ¶ 15. As shown on the gold circle on the front cover of the book depicted above, the

1

2024 edition was "Updated With 3 Brand New Chapters"; the title of the book was enlarged to include "The Sunday Times Bestseller", whereas the first edition from 2018 was merely titled Brutally Honest; and most importantly, the 2018 edition and the 2024 edition each have a distinct International Standard Book Number (ISBN): the ISBN number for the 2018 edition is ISBN 9781787133525, whereas the ISBN number for the 2024 edition is ISBN 9780755310630.[1]

Indeed, mention of the 2024 edition of *Brutally Honest* does not appear until the Motion's twelfth page, at which point Defendant takes the wholly frivolous position that the 2024 edition falls within the prohibitions of the single-publication rule. To support this erroneous legal theory, Defendant relies on inapposite case law involving the continued dissemination of statements made in very different contexts, such as statements made in advertisements and reports made to a national medical provider database. *See generally Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332 (Fla. 3d DCA 2022); *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173 (Fla. 5th DCA 2016).

Comedically enough, the court in *Swedberg* found the single-publication rule not to apply in that case. *Swedberg*, 338 So.3d at 336. In so finding, the court noted that "Showgirls' second publication was *not* the continued dissemination of a *single edition of a book*, newspaper, or online article." *Id.* at 336 (emphasis added). Just as in *Swedberg*, the 2024 edition of *Brutally Honest* was a new edition, and "not the continued dissemination of a single edition of a book." *Id.*

Defendant's omission of case law that would actually support Defendant's position is telling because there is none. In fact, it is hornbook defamation law that subsequent publications of even the same material, such as a new edition of a book, triggers a new cause of action and resets the statute of limitations period.

---

[1] The ISBN is a unique, numeric identification code for books, administered and assigned by Bowker, the U.S. ISBN agency. *See* Bowker, ISBN US, https://www.bowker.com/isbn-us (accessed August 23, 2024).

This duplicitous maneuvering may have put Defendant under the impression that mentioning the timing of Mr. Belafonte's judicial approval to move to Florida — July 2023 — is some grand revelation or "gotcha." Not so. As set forth in Paragraph 23 of the Complaint, "[a]t the time of the *publication* of the defamatory statements and communications set forth in this Complaint, Mr. Belafonte was a resident and citizen of the State of Florida." ECF 1, ¶ 23 (emphasis added). Indeed, Mr. Belafonte was already a resident and citizen of Florida when the new edition of *Brutally Honest* was published on March 8, 2024, and likewise during Ms. Brown's subsequent press junket to promote the book's new edition. Contrary to Defendant's egregious accusations, no false allegations of fact have been made in the Complaint.

As demonstrated below, the remaining arguments in Defendant's Motion are likewise frivolous. The filing of a frivolous and improper Rule 11 motion is itself a violation of Rule 11. Rule 11 further provides that "the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion." Fed. R. Civ. P. 11(c)(2). An award of attorneys' fees to Mr. Belafonte is also appropriate because Defendant and her counsel have *vexatiously and unreasonably multiplied the proceedings* by forcing Plaintiff to respond to arguments that would be more properly brought in a motion to dismiss. 28 U.S.C. § 1927. Accordingly, Mr. Belafonte seeks appropriate relief from the Court for having to defend against Defendant's baseless Motion.

**FACTUAL BACKGROUND**

Contrary to the impression that may have been imparted by Defendant's Motion, this lawsuit is more than simply an action for defamation. Mr. Belafonte initiated this action against Defendant following Defendant's near decade-long campaign to cause him severe emotional distress and destroy his reputation. ECF 1, ¶ 1. Ms. Brown's planned takedown and harassment of

Mr. Belafonte began with a fraudulent claim of domestic violence in California court in 2017 and continues in rapid-fire motion to this day. *Id.* at ¶ 2. Hence, in addition to his defamation claims, Mr. Belafonte also seeks to recover for intentional infliction of emotional distress ("IIED"). *Id.* at ¶¶ 101-105. The Complaint lays bare the extensive history of Ms. Brown's wide-ranging, diabolical harassment campaign against Mr. Belafonte because IIED entails a fact-intensive inquiry for this Court.[2] The Complaint also contains numerous factual allegations showing the widespread nature of Ms. Brown's *very recent* efforts to promote her defamatory statements in the press and media, including, without limitation, her appearances on high-profile, televised programs such as The View, The Tonight Show with Jimmy Fallon, The Jennifer Hudson Show, and Live with Jenna and Hoda. *See, e.g.*, ECF 1, ¶¶ 64.o., 64.p., 64.q., 64.s., 64.t.

The Motion makes much of the fact that the Complaint contains many factual allegations that predate the applicable statute of limitations period of two-years for Plaintiff's defamation claims. Plaintiff takes this opportunity to clarify that it is not seeking to hold Defendant liable for any defamatory conduct that occurred prior to the applicable limitations period. However, these facts are essential to the Court's evaluation of Plaintiff's claims for two important reasons. First, the "continuing tort" doctrine applies to a claim for IIED. *Spadaro v. City of Miramar*, 855 F.Supp.2d 1317, 1330 (S.D. Fla. 2012). When the continuing tort doctrine applies, "the limitations period runs to the date the tortious conduct ceases." *Id.* Additionally, "in order for the doctrine of continuing torts to apply, [Plaintiff] needs to allege continuous, tortious acts by the Defendant[] which would allow a jury to conclude that a continuing tort has occurred." *Id.* Thus, those of Plaintiff's factual allegations that predate the applicable limitations period are necessary both to

---

[2] Plaintiff incorporates by reference the detailed factual allegations set forth in the Complaint.

4

show the continuous nature of Defendant's tortious conduct, as well as to avail himself of the "continuing tort" doctrine.

Second, the Complaint's factual allegations that predate the limitations period serve to plausibly plead "actual malice."[3] The "actual malice" standard requires defamation plaintiffs to "allege facts sufficient to give rise to a reasonable inference that the false statements were made with knowledge that they were false or with reckless disregard of whether they were false." *Corsi v. Newsmax Media, Inc.*, 519 F.Supp.3d 1110, 1122 (S.D. Fla. 2021) (citations and internal quotations omitted). Courts will dismiss a defamation claim where the plaintiff fails to sufficiently plead actual malice. *Id.* at 1123. To satisfy the "actual malice" standard and avoid dismissal, the Complaint contains many factual allegations that demonstrate Defendant's clear knowledge of the falsity of her statements, many of which took place before the applicable limitations period. *See, e.g.*, ECF 1, ¶¶ 51, 53-54, 64, 67, 76-77.[4]

Unfortunately, Ms. Brown shows no signs of ceasing or retreating in her efforts to destroy Mr. Belafonte's life and emotional well-being. And the publication of the new and expanded edition of her memoir in 2024 has injected a renewed fervor and brazenness into her destructive rampage. ECF 1, ¶ 15. While the Motion accuses Mr. Belafonte of a supposed "telling failure to allege that the paperback edition contains any new or different statements about him," (ECF 23, at 12-13) Mr. Belafonte sufficiently alleged, at Paragraph 15, that "[t]he defamatory publications were then republished in 2024 with three additional chapters to the book, as well as changes and updates within the original chapters in an effort to cause even greater damage to Mr. Belafonte's

---

[3] Plaintiff does not concede that the "actual malice" standard applies to his defamation claims. Regardless of which intent standard applies, Plaintiff has plausibly averred enough facts to satisfy the more stringent and exacting "actual malice" standard.
[4] The referenced Complaint Paragraphs are cited only as a representative sampling of factual allegations that give rise to a reasonable inference of "actual malice." They are not an exhaustive list of all the allegations that go to "actual malice."

5

reputation." ECF 1, ¶ 15. As set forth below, this is but one of many examples of intentional misrepresentations and downright falsehoods perpetuated by Defendant and her counsel in the Motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 11 "is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463, 464-65 (S.D. Fla. 2020) (emphasis in original) (citing *Davis v. Carl*, 9106 F.2d 533, 538 (11th Cir. 1990)). While Courts have inherent authority to police those appearing before them, "[t]his power must be exercised with restraint and discretion and used to fashion an appropriate sanction for conduct which abuses the judicial process." *Purchasing Power, LLC v. Bluestem Brands., Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). While "sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." Almeida, 335 F.R.D. at 465 (citations omitted).

Further, "a Rule 11 motion is not an avenue to either seek repleading under Rule 12 or to seek judgment on the merits of a case under Rule 56. Instead, its purpose is to determine whether a party or attorney has abused the judicial process." *Id.* (citations omitted); *see also Bigford v. BESM, Inc.,* 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012) ("Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits.")

The "filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions." *Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014) (quoting Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes). Accordingly, where, as here, "a party files a Rule 11 motion for an improper purpose, the court may award fees to the target of the motion." *Id.* Moreover, when faced with attorneys that multiply the proceedings unreasonably and vexatiously, Courts are also empowered by 28 U.S.C. § 1927 to require such attorneys "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The filing of this Motion was precisely the type of conduct that Section 1927 was designed to punish.

## ARGUMENT

### I. THE 2024 PUBLICATION OF *BRUTALLY HONEST* TRIGGERED A NEW CAUSE OF ACTION AND CORRESPONDING LIMITATIONS PERIOD

Defendant's misplaced statute of limitations defense, and indeed the entire Motion, hinges on Defendant's egregious misrepresentation regarding the 2024 publication of a new and expanded version of Defendant's memoir, *Brutally Honest*. For the first eleven pages of its briefing, Defendant intentionally omits any mention of the publication of the 2024 edition of the memoir, instead putting the Court under the impression that Mr. Belafonte is complaining of statements that were published in 2018. *See* ECF 23, at 5 (noting that *Brutally Honest* "was originally published in 2018.").

By the time Defendant owns up to this consequential omission of fact, it then falsely presents to the Court that *Brutally Honest* "was re-published in paperback form in 2024 after its initial publication in 2018", and therefore falls within the limitations of Florida's single-publication rule. ECF 23, at 12. Defendant then asks this court to adopt the nonsensical position

7

that new, distinct *editions* of a book are continued disseminations of the original edition, rather than an entirely separate, aggregate publication.

Plaintiff takes this opportunity to clarify the purpose and the meaning of Florida's single-publication rule, codified at Fla. Stat. §§ 770.05 and 770.07[5]. As articulated in *Swedberg*,

> The single publication rule developed out of the law of defamation and libel. At common law, each publication of a defamation or libel gave rise to a separate cause of action. With the advent of mass communication, however, obvious problems were presented by a rule of law that would view the sale of each *copy* of a newspaper or book as a separate tort. To correct these problems, courts began treating *a single edition of a newspaper or book* as a single publication. Under this approach, the wideness of the dissemination of a particular edition does not give rise to separate torts but goes instead to the issue of damages.
> . . .
> This means that continued dissemination of a statement through the mass media will be treated as a single publication when the publisher does not make *a separate publishing decision as to each copy or small batch of copies*.

*Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332, 335-36 (Fla. 3d DCA 2022) (internal quotation marks omitted and emphasis added). In short, the single-publication rule operates to bar the proliferation of claims arising from each utterance of a defamatory statement, or from the sale or exhibition of each copy containing the defamatory statement. Indeed, Section 770.05 itself enumerates several, real-world examples of publications that fall within the ambit of the single-publication rule, such as "any one edition of a newspaper, book, or magazine, any one presentation to an audience, any one broadcast over radio or television, or any one exhibition of a motion picture." Fla. Stat. § 770.05.

---

[5] Section 770.07 provides, in pertinent part, that a defamation claim "founded upon a single publication or exhibition or utterance . . . shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in this state." Fla. Stat. §770.07

At best, Defendant sets up a strawman by arguing as though Mr. Belafonte is seeking redress for the continued dissemination of false statements made about him. At worst, and more realistically, Defendant is advancing the frivolous argument that new editions of a book, such as the March 8, 2024 publication of *Brutally Honest*, are somehow barred by the limitations of the single-publication rule. "Subsequent publications of the same material, such as a new edition of a newspaper or book, are republications that 'trigger a new cause of action and commence a new limitations period.'" *Epic Metals Corp. v. CONDEC, Inc.*, 867 F.Supp. 1009, 1016 (M.D. Fla. 1994) (citations omitted); *see also* Restatement (Second) of Torts § 577A cmt. d ("the single publication rule . . . does not include separate aggregate publications on different occasions. Thus if the same defamatory statement is published in the morning and evening editions of a newspaper, each edition is a separate single publication and there are two causes of action. The same is true of a rebroadcast of the defamation over radio or television or a second run of a motion picture on the same evening."). Thus, the second edition of the same book is a *quintessential example* of a separate aggregate publication where the single-publication rule does not apply.

Moreover, contrary to the Motion's misrepresentations, the Complaint does sufficiently allege that the 2024 edition of Brutally Honest contains "three additional chapters . . . as well as changes and updates within the original chapters in an effort to cause even greater damage to Mr. Belafonte's reputation." ECF 1, ¶ 15. Even in the absence of this detailed and sufficient allegation, the single-publication rule would still not apply. The Motion makes much of the difference in formatting of the 2018 edition (hardcover) and the 2024 edition (paperback), but courts in other jurisdictions to reach the issue have held that repetition of a defamatory statement in a later, paperback edition of a book, gave rise to a new cause of action, notwithstanding the expiration of

9

the limitations period that accrued upon the previous, hardcover edition's publication. *See, e.g., Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.S.2d 422 (1981).

Accordingly, Plaintiff's defamation claims are not time-barred and Defendant has no basis upon which to seek sanctions.

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Having concealed the 2024 publication of *Brutally Honest* from the Court for much of its brief and then advanced the clearly erroneous theory concerning the limitations period, Defendant asks this Court to take yet another leap (or two). Specifically, the Motion avers that Mr. Belafonte's asserted basis for personal jurisdiction over Defendant "is predicated entirely on the false pretense that Belafonte was a citizen of Florida between 2017 and 2023." ECF 23, at 6. No such false pretense is asserted in or imparted by the Complaint. Rather, this "false pretense" was created by Defendant's Motion itself: by highlighting only the memoir's first-edition publication in 2018, Defendant and her counsel try to make it appear as though the relevant acts that gave rise to this lawsuit occurred at or around 2018. Hence, Mr. Belafonte's judicial approval to move to Florida in July 2023, a matter of public record, is painted as incongruous to the jurisdictional allegations of the Complaint. However, Defendant and her counsel do not get to benefit from their lack of candor regarding the memoir's 2024 publication. As set forth in Paragraph 23 of the Complaint, Mr. Belafonte had resided in Florida for nearly a year prior to the March 8, 2024 publication of *Brutally Honest*. Accordingly, no false allegation of facts have been made in Complaint, and Defendant's accusation thereof is egregious and should subject her and her counsel to sanctions.

Furthermore, to the extent that the Motion seeks to prematurely argue the merits of Plaintiff's jurisdictional arguments, the Complaint has sufficiently alleged personal jurisdiction over Defendant. The Court must apply Florida's long-arm statute, codified at Fla. Stat. § 48.193,

in determining whether it has personal jurisdiction over a nonresident defendant. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). The Florida long-arm statute provides, in pertinent part, that a nonresident defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from . . . [c]omitting a tortious act within this state." Fla. Stat. § 48.193(1)(b). In Florida, a nonresident defendant "commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010). The long-arm statute is likewise satisfied for broadcasts of defamatory statements that are foreseeably aired in Florida, and are, in fact, aired in Florida. *See Smith v. Cuban American Nat. Foundation*, 657 So.2d 86, 86 (1995) (defendant "*prima facie*" committed a tortious act in Florida "by making certain allegedly defamatory statements in a televised interview conducted in Washington, D.C. . . . under circumstances in which it was entirely foreseeable that the subject film would be aired in Florida, which in fact it was").

Having satisfied Florida's long-arm statute, the Court must next determine whether the exercise of personal jurisdiction satisfies Due Process. This Court's exercise of jurisdiction over Ms. Brown would comply with Due Process under both the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984), as well as the traditional "minimum contacts" analysis. Under *Calder*'s test, "even a single tortious act by a nonresident defendant can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state, if the tort (1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Stone v. Shafran*, 641

11

F.Supp.3d 1344, 1360 (S.D. Fla. 2022) (internal quotations and citations omitted). The Complaint meets all three prongs of the "effects test": (1) Defendant's torts of defamation and IIED were intentional; (2) Defendant "expressly aimed" her wrongful conduct into Florida and individually targeted a known forum resident; and (3) defendant knew that the harm caused by her intentional actions would be suffered in Florida. *Id.* "That Defendant[] also made defamatory statements to people all over the United States is of no consequence." *Id.*

The Motion's reliance on *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023) and *Sovereign Offshore Servs., LLC v. Shames,* No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) are misplaced. Those cases involved the posting of allegedly defamatory statements online, accessible by internet users in all 50 states. In contrast, the defamatory statements at issue in this action were not mere statements posted as a product review on Amazon (*McCall*) or a blog post (*Shames*); rather, they involve statements contained in Defendant's memoir sold at retailers in Florida, statements made by Defendant in live and recorded interviews that were aired and broadcast in Florida, as well as defamatory statements posted or published in online media publications. Defendant's multi-pronged efforts to promote her career via the dissemination of the defamatory statements regarding Mr. Belafonte are precisely the type of "continuous and deliberate" exploitation of the market contemplated by the Supreme Court's minimum contacts analysis in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (personal jurisdiction over nonresident publisher proper where publisher "continuously and deliberately exploited the [forum] market" and "reasonably anticipate[d] being haled into court there in a libel action based on the contents of its magazine.").

The Motion's reliance on *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) is also misplaced. In *Hall*, the Eleventh Circuit explained that for *Keeton* to apply, "Hall would either

12

have to have been the publisher of Music Connection magazine, *or the alleged libel would have to have arisen from the activities through which Hall exploited the Florida market*—his concert performances and recording sales." *Hall*, 916 F.2d at 1518 (emphasis added). The total lack of nexus between musician Daryl Hall's concert performances and the allegedly defamatory statements he made in a magazine interview is all too clear. In contrast, Defendant's promotional activities here are *specifically and inextricably linked* to the defamatory statements she made in her memoir and in her numerous appearances in the media. *Cf. Hall*, 916 F.2d at 1518 ("Although this *litigation* arose from Hall's statement, it did not arise from the activities Hall engaged in in Florida.") Accordingly, this litigation *arose* from Defendant's commercial activities directed to Florida, satisfying the "purposeful availment" test.

In any event, Defendant's attempt to litigate the propriety of personal jurisdiction is wholly improper within the context of a motion for sanctions. Defendant's Motion is a transparent "attempt to convert a dispute over the factual allegations and legal arguments in Plaintiff's complaint into a sanctions dispute" and would be more proper if brought as a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2). *Almeida*, 335 F.R.D. at 465. A motion for sanctions "is not an avenue to either seek repleading under Rule 12 or to seek judgment on the merits of a case under Rule 56." *Id.* Yet this is exactly what the Motion represents: a naked effort to gain an additional bite at the apple of a Rule 12 motion, and in so doing, Defendant and her counsel have "unreasonably and vexatiously" multiplied the proceedings. *See* 28 U.S.C. § 1927. The proper use of a Rule 11 motion is to "determine whether a party or attorney has abused the judicial process." *Almeida*, 335 F.R.D. at 465. Ironically, the only ones to have abused the judicial process here are Defendant and her counsel in having brought this Motion.

13

### III. INJUNCTIVE RELIEF IS PROPER WHERE A JUDGMENT FOR MONETARY DAMAGES WOULD NOT AFFORD EFFECTIVE RELIEF FROM A CONTINUING PATTERN OF DEFAMATION

While preliminary injunctive relief is unavailable in defamation actions, *permanent* injunctive may be available for statements that have *already* been adjudicated as defamatory. "[A] narrowly tailored injunction prohibiting speech already found defamatory by the jury is not an invalid prior restraint when a judgment for monetary damages would not afford the plaintiff effective relief from a continuing pattern of defamation." *Ward v. Triple Canopy, Inc.*, 2017 WL 3149431, at *5 (M.D. Fla. Jul. 25, 2017); *Deligdish v. Bender*, No. 6:23-cv-417, 2023 WL 5016547, at *12 (M.D. Fla. Aug. 7, 2023); *see also Wentz v. Project Veritas*, 2018 WL 11252110, at *5 (M.D. Fla. Jan. 31, 2008) (allowing claim for injunctive relief to go forward "[s]ince equity serves to enjoin defamation in certain instances that may be applicable to [plaintiff's] case" and finding irreparable harm inquiry "premature."). The factual circumstances here, namely Defendant's unceasing pattern of harassment, present precisely the exceptional scenario contemplated by the courts in *Ward*, *Deligdish*, and *Wentz*.

At a minimum, the request for a permanent injunction is not grounds for sanctions. Rule 11 is not intended to deter "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*, 827 F.2d 1454, 1458 (11th Cir. 1987) ("Rule 11 is intended to deter frivolous suits, not to deter novel legal arguments or cases of first impression"). Accordingly, Defendant has no proper grounds upon which to seek sanctions.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion and award Plaintiff the fees and costs incurred in defending against the Motion.

Dated: August 23, 2024                                         Respectfully submitted,

/s/ *David D. Lin*
David D. Lin (pro hac vice)
david@iLawco.com
Anna Iskikian (pro hac vice)
anna@iLawco.com
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9325

*Counsel for Plaintiff Stephen Belafonte*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of August, 2024, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

By: */s/ Anna Iskikian*
Anna Iskikian (pro hac vice)
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
anna@iLawco.com