UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-22045-GAYLES

STEPHEN BELAFONTE,

    Plaintiff,

v.

MELANIE JANINE BROWN,

    Defendant.
_____/

**DEFENDANT MELANIE BROWN'S REPLY
IN FURTHER SUPPORT OF HER MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................2

I.  BELAFONTE'S JURISDICTIONAL CONTENTIONS ARE LEGALLY AND
    FACTUALLY FRIVOLOUS ...........................................................................................2

    A.  Belafonte's Unwithdrawn Jurisdictional Theory Has No Reasonable
        Chance At Success ...............................................................................................2

    B.  Belafonte Admits That He Did Not Reside In Florida Until 2023, Contrary
        To His Complaint's Allegations ...........................................................................5

II. BELAFONTE CONFIRMS THAT THE COMPLAINT ALLEGES PLAINLY
    TIME-BARRED MATTERS THAT HE DECLINED TO WITHDRAW ........................7

III. BELAFONTE DECLINES TO DEFEND OR WITHDRAW HIS REQUEST
     FOR AN UNCONSTITUTIONAL AND OVERBROAD PRIOR RESTRAINT .............9

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Calder v. Jones*,
   465 U.S. 783 (1984) ................................................................................................1, 2

*Carroll v. President & Comm'rs of Princess Anne*,
   393 U.S. 175 (1968) ....................................................................................................10

*Demby v. English*,
   667 So.2d 350 (Fla. 1st DCA 1995) ............................................................................10

*Gambello v. Time Warner Commc'ns, Inc.*,
   186 F. Supp. 2d 209 (E.D.N.Y. 2002) ..........................................................................1

*Krink v. Suntrust Bank*,
   2010 WL 11475867 (M.D. Fla. Apr. 6, 2010) ..............................................................7

*Madara v. Hall*,
   916 F.2d 1510 (11th Cir. 1990) ...............................................................................3, 4

*McCall v. Zotos*,
   2023 WL 3946827 (11th Cir. June 12, 2023) ..............................................................2

*Near v. Minnesota ex rel. Olson*,
   283 U.S. 697 (1931) ................................................................................................9, 10

*Rogers v. Nacchio*,
   241 F. App'x 602 (11th Cir. 2007) ...........................................................................6, 7

*Stone v. Shafran*,
   641 F. Supp. 3d 1344 (S.D. Fla. 2022) .........................................................................4

*Swedberg v. Goldfinger's S., Inc.*,
   338 So. 3d 332 (Fla. 3d DCA 2022) .............................................................................9

*Trump v. Clinton*,
   640 F. Supp. 1321 (S.D. Fla. 2022) ..............................................................................3

## **Statutes and Rules**

Fed. R. Civ. P. 11 ..................................................................................................... 5, 6, 9, 10

28 U.S.C. § 1927 ................................................................................................................4

## **Other Authorities**

Fed. R. Civ. P. 11, Advisory Comm. Note on 1993 Amend. ............................................8

## INTRODUCTION

Stephen Belafonte's filing of this action violated Rule 11 from top to bottom. Belafonte's asserted basis for personal jurisdiction is foreclosed by settled due process law. His defamation claims are concededly based on time-barred and otherwise non-actionable statements. And his requested relief invites the Court to permanently deprive Brown of core First Amendment freedoms. Belafonte elected not to withdraw any of his offending allegations during the Rule 11(c)(2) safe-harbor period. Yet Belafonte's opposition makes plain that these allegations and legal theories are indefensible as alleged. Belafonte concedes, in substance if not in fact, that many of his allegations are either untrue or unviable. Just as revealing, though, are the many frivolous allegations that Belafonte does not even attempt to justify—including the patent overbreadth of his injunctive relief requests or his inclusion of plainly non-actionable matters. Instead, Belafonte devotes the majority of his opposition to arguing that Florida's single-publication rule does not apply to the paperback edition of Brown's memoir. That is wrong, but it is also a distraction: Belafonte himself admits that his Complaint "contains many" time-barred allegations *regardless* of the single-publication rule.

Belafonte's decision to stand on allegations that he refused to withdraw and scarcely attempts to defend is regrettable, but it is not excusable. *See Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 229–30 (E.D.N.Y. 2002) (Rule 11 sanctions appropriate when non-movant "refused to withdraw the claim" after being "confronted with … facts" that he "did not deny"). Belafonte should have withdrawn his Complaint, and Brown should have never had to defend herself against this unfounded suit, let alone seek relief from allegations Belafonte declines to offer any basis for having made. A reasonable sanction imposed on Belafonte and his counsel is necessary to deter similarly vexatious conduct in the future.

**ARGUMENT**

I. **BELAFONTE'S JURISDICTIONAL CONTENTIONS ARE LEGALLY AND FACTUALLY FRIVOLOUS**

   A. **Belafonte's Unwithdrawn Jurisdictional Theory Has No Reasonable Chance At Success**

Belafonte's jurisdictional theory is neither defensible nor meaningfully defended as alleged. In the Complaint, Belafonte asserts that this Court has personal jurisdiction over Brown, a United Kingdom citizen, because of Brown's "statements published to the *worldwide* media" (ECF 1 ¶ 23 (emphasis added)), Brown's alleged "knowledge" that those statements would be "disseminated in the *worldwide* media, including throughout Florida" (*id.* ¶ 24 (emphasis added)), the fact that Brown's statements "were *accessible* on network television and the Internet in the state of Florida" (*id.* ¶ 26 (emphasis added)), and Belafonte's (alleged) residence in Florida (*id.* ¶ 23). Nowhere does the Complaint allege that Brown ever set foot in Florida, that any of the events underlying the allegedly defamatory statements (*i.e.*, Belafonte's abuse of Brown) occurred in Florida, that Belafonte's career as a film producer or reputation is centered in Florida, or that Brown specifically directed her statements at Florida (as opposed to the "worldwide media"). (*Id.* ¶¶ 23–27.) Thus, according to the jurisdictional theory that Belafonte alleges, a defendant's awareness that statements published worldwide will end up being "accessible" in the forum where the plaintiff resides permits personal jurisdiction over that defendant. (*Id.*)

There is no daylight between that theory and the same one that the Supreme Court and the Eleventh Circuit have repeatedly held violates due process.[1] In *Calder*, the Supreme Court made clear that "[t]he mere fact that [a defendant] can 'foresee' that [the statement] will be circulated and have an effect [in the forum state] is not sufficient for an assertion of jurisdiction." 465 U.S.

---

[1] This conclusion holds true even when accepting as true Belafonte's misrepresentation, discussed *infra* at pp. 5–6, about his supposed residence in Florida between 2017 and 2023.

2

783, 789 (1984). And in *McCall*, the Eleventh Circuit held that "allegations that [a statement] was accessible and accessed in Florida and that [the plaintiffs] resided in Florida are not sufficient to confer personal jurisdiction," even though the defendant "knew that the plaintiffs resided in Florida," because the relevant question is whether the defendant expressly "targeted" the forum itself—not a forum resident—"as the focal point." 2023 WL 3946827, at *5 (11th Cir. June 12, 2023). Yet the Complaint's allegations track those clearly insufficient assertions nearly to the letter. (*See* ECF 1 ¶¶ 23–27.) Inescapably, then, Belafonte's jurisdictional "theories have no reasonable chance of success." *Trump v. Clinton*, 640 F. Supp. 1321, 1329 (S.D. Fla. 2022).

Belafonte's own allegations about the manner in which Brown's statements became "accessible" in Florida reinforce that conclusion. Belafonte claims that the Court has personal jurisdiction over Brown because Brown published statements "to the worldwide media," including in "widely promoted talk shows," and that these statements "were accessible on network television and the Internet in the state of Florida." (ECF 1 ¶¶ 23–26.) Tellingly absent from Belafonte's stream-of-commerce theory is any suggestion that Brown *herself* aimed her statements at Florida. Indeed, Brown "was not the … publisher" of the worldwide media or widely promoted talk shows and "did not control [the] circulation and distribution" of such sources. *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990). Indeed, "[s]imply giving an interview to a reporter is not enough to cause [Brown] to anticipate being haled into court in Florida." *Id.* Brown's supposed "awareness" that her statements "might find their way to Florida is not enough to justify the exercise of personal jurisdiction." *Id.* The fact that *others* published Brown's statements in Florida plainly does not show that *Brown* purposefully availed herself of the privilege of doing business in Florida, or that she "deliberately" exploited the Florida market. (*Contra* ECF 29 at 16.)

3

Faced with decades of settled law foreclosing his assertion of personal jurisdiction, Belafonte passingly cites a single district court order, *Stone v. Shafran*, 641 F. Supp. 3d 1344 (S.D. Fla. 2022), as putative support for his jurisdictional theory.[2] (ECF 29 at 14–15.) But *Stone* only spotlights the inadequacy of Belafonte's jurisdictional allegations. In *Stone*, the defendant's defamatory statements themselves were "aimed at Florida" because those statements "identified fraudulent activity as occurring in Miami, Florida" and committed by Florida residents operating a business in Florida. *Id.* at 1360. Belafonte's Complaint contains no remotely similar allegation. Nor could it. Brown's statements here concerned activities that took place outside the forum—namely, Belafonte's serial abuse of Brown during the parties' marriage and residence in California. What's more, the *Stone* defendants "purposefully availed themselves of the privileges of doing business within Florida" because they "had an agent in Florida" and "negotiated a business deal with Plaintiffs in Florida," in marked contrast to Belafonte's allegations here. *Id.* at 1361. In the end, even Belafonte's sole cited authority on personal jurisdiction reaffirms the necessity of alleging a defendant's specific and deliberate contact with the forum state—an allegation that is absent from Belafonte's Complaint.[3]

---

[2] Belafonte inexplicably devotes a page of his opposition to discussing Florida's long-arm statute (ECF 29 at 13–14), an issue Brown has not raised.

[3] Unable to defend his jurisdictional theory on its own terms, Belafonte instead invents new facts in his opposition. In his brief—but not his unamended Complaint—Belafonte contends for the first time that Brown's statements "involve statements contained in Defendant's memoir sold at retailers in Florida." (ECF 29 at 15.) The Complaint does not allege a single fact about book sales in Florida (or anywhere else) (*see generally* ECF 1), and even Belafonte's newfound allegation says nothing about Brown's control over the distribution of her memoir in Florida (ECF 29 at 15). Thus, Belafonte's theory of personal jurisdiction is plainly unconstitutional even accepting this thirteenth-hour allegation as true. *See* Madara, 916 F.2d at 1519. Regardless, Belafonte's attempt to introduce unalleged facts after declining to withdraw his as-alleged jurisdictional theory within the Rule 11(c)(2) safe-harbor period is the kind of bait-and-switch tactic that the safe-harbor provision was designed to prevent.

For this reason among others, Belafonte's request to invoke 28 U.S.C. § 1927 (ECF 29 at 16) lacks merit. If any party "unreasonably and vexatiously" multiplied the proceedings, it is Belafonte, who forced litigation of this Motion when he declined to dismiss or even amend a single one of the many indefensible

### B.     Belafonte Admits That He Did Not Reside In Florida Until 2023, Contrary To His Complaint's Allegations

Contrary to the arguments in his opposition, Belafonte's Complaint does, in fact, contain false allegations in support of his misplaced jurisdictional theory. Paragraph 64 of the Complaint alleges that "Ms. Brown has published … false and defamatory statements about Mr. Belafonte throughout various press appearances and interviews *from 2018* until the present," and lists dozens of such alleged "false and defamatory statements" dated between November 2018 and January 2023. (ECF 1 ¶ 64 (emphasis added).) The Complaint elsewhere claims that Brown made defamatory statements about Belafonte in 2017. (*See, e.g.*, *id.* ¶¶ 38–39, 51.) Belafonte's two defamation claims (Counts I and II) both "repeat[], reallege[], and incorporate[]" every one of these statements (*id.* ¶¶ 81, 96), and are expressly based on them (*see id.* ¶¶ 83, 98). Paragraph 23 of the Complaint then alleges that ***"[a]t the time of the publication of the defamatory statements*** and communications *set forth in this Complaint*, Mr. Belafonte was a resident and citizen of the State of Florida." (ECF 1 ¶ 23 (emphases added).)

That allegation was indisputably false, and Belafonte himself confirms it. In his opposition, Belafonte acknowledges both that he did not move to Florida until July 2023 and that his relocation was "a matter of public record." (ECF 29 at 10.) That of course means that Belafonte did not live in Florida "[a]t the time of the publication of the defamatory statements … set forth in th[e] Complaint" that predate 2023 and that Belafonte knew it. (ECF 1 ¶ 23.) Belafonte and his counsel's attempt to manufacture personal jurisdiction based on a knowingly dishonest allegation violates Rule 11 at its core. *See* Fed. R. Civ. P. 11(b)(3).

---

(and undefended) allegations in his Complaint within Rule 11(c)(2)'s 21-day safe harbor. Moreover, this Motion seeks fees, not dismissal. (*Contra* ECF 29 at 16.)

Belafonte's only defense of the truth of paragraph 23 is no defense at all. Belafonte argues only that the alleged statements in Brown's memoir are not covered by Florida's single-publication rule and, thus, should be considered published at the time the paperback edition was released in 2024, rather than at the time of the hardcover's publication in 2018. (ECF 29 at 13.) That is wrong, and in any event is beside the point: Belafonte offers no answer whatsoever for the dozens of statements he alleges that were *not* published in the memoir, including statements dating back to 2017 and 2018. (ECF 1 ¶¶ 38–39, 51, 64, 81, 83, 96, 98). Those statements, too, were allegedly "defamatory statements and communications set forth in th[e] Complaint," and paragraph 23 unmistakably alleges that Belafonte resided in Florida "[a]t the time of the[ir] publication."

Nor does Belafonte attempt to offer an excuse for his knowingly false allegation. Indeed, there is none. As Belafonte notes, his judicially approved move from California to Florida was "a matter of public record" (ECF 29 at 13)—one that he and his counsel should have noted "after an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b), or, at the *very* least, should have owned up to upon Brown's pre-filing service of her Rule 11 motion.

Finally, Belafonte asserts that "litigat[ing] the propriety of personal jurisdiction is wholly improper within the context of a motion for sanctions." (ECF 29 at 16.) That is not the law. Rule 11 prohibits "claims, *defenses, and other legal contentions*" that are not "warranted by existing law," as well as "factual contentions" that lack "evidentiary support." Fed. R. Civ. P. 11(b) (emphasis added). That is why courts both in this district and around the country invoke Rule 11 to sanction parties, like Belafonte, who raise frivolous jurisdictional arguments or knowingly misrepresent facts. *See, e.g.*, *Rogers v. Nacchio*, 241 F. App'x 602, 610 (11th Cir. 2007) (affirming Rule 11 sanction imposed in this district on plaintiffs who "provided no support" for their allegation of personal jurisdiction); *Krink v. Suntrust Bank*, 2010 WL 11475867, at *3–4 (M.D.

6

Fla. Apr. 6, ) (imposing Rule 11 sanction for frivolous personal jurisdiction contentions). If anything, jurisdictional contentions should be especially scrutinized under Rule 11: frivolous jurisdictional allegations risk burdening a federal court's docket with entire lawsuits that it has no power to resolve and burdening foreign parties with no reasonable connection to the jurisdiction. Unfortunately, that is just what happened here.

## II.    BELAFONTE CONFIRMS THAT THE COMPLAINT ALLEGES PLAINLY TIME-BARRED MATTERS THAT HE DECLINED TO WITHDRAW

Belafonte spends the lion's share of his opposition arguing that Florida's single-publication rule does not apply to Brown's memoir. Belafonte's arguments about the single-publication rule are a red herring. Even treating Belafonte's defamation claims as timely as to the memoir's statements, Belafonte himself admits "that the Complaint contains **many** factual allegations that predate the applicable statute of limitations period of two-years [sic]"—allegations he has not withdrawn. (ECF 29 at 7 (emphasis added).)

Doubling down on his impertinent and time-barred allegations, Belafonte offers two unalleged rationales for including these statements in his Complaint. Both are pretextual (indeed, it is clear that this is a SLAPP lawsuit that Belafonte improperly filed for media attention). First, Belafonte contends that he included time-barred statements to show that the "continuing tort doctrine" applies to his IIED claim. (*Id.*) Belafonte's Complaint says otherwise: Belafonte expressly alleges dozens of time-barred statements that he calls "*defamatory* statements" (ECF 1 ¶ 64 (emphasis added)), and expressly incorporates into his *defamation* claims (*id.* ¶¶ 81, 83, 96). Second, Belafonte submits that he included the time-barred statements in his defamation claims to plead actual malice. (ECF 29 at 8.) That explanation blinks reality. The actual malice standard evaluates a defendant's state of mind; it has nothing to do with when the defendant made the statement. And Belafonte contradictorily argues that actual malice does not apply. (*Id.* at 8 n.3.)

7

Belafonte's next tries to distract from his refusal to withdraw these non-actionable allegations by announcing that he "takes this opportunity to clarify that it [sic] is not seeking to hold Defendant liable for any defamatory conduct that occurred prior to the applicable limitations period." (ECF 29 at 7.) But the Complaint itself makes no distinction between time-barred statements Belafonte is seeking to recover for and ones that he is not; to the contrary, Belafonte's claims expressly incorporate, and are expressly based on, such statements. (*See, e.g.*, ECF 1 ¶¶ 38–39, 51, 64, 81, 83, 98.) Moreover, the time to "take th[e] opportunity to clarify" that his Complaint is frivolous as alleged was during the Rule 11(c)(2) safe harbor. *See* Fed. R. Civ. P. 11, Advisory Comm. Note on 1993 Amend. (explaining that the purpose of the safe harbor is to allow "the *timely* withdrawal of a contention [to] protect a party against a motion for sanctions" (emphasis added)). Belafonte declined that opportunity, and likewise declined to provide such "clarif[ication]" to undersigned counsel or otherwise make any good-faith effort to avoid or narrow the issues for litigation in this Motion, despite undersigned counsel's invitation to confer. (*See* ECF 23 at 22.)

Belafonte also refuses to defend his inclusion of statements that are plainly non-actionable even *independently* of their timeliness. As previously outlined (ECF 23 at 18), Belafonte seeks to recover for statements plainly barred by the litigation privilege and the First Amendment, as well as for statements Brown did not publish. That much is especially clear as to Belafonte's attempt to litigate statements Brown made in her application for a TRO in the parties' divorce case in California. Such statements are obviously protected by the litigation privilege, and Belafonte conspicuously does not contest that, contrary to his allegations (ECF 1 ¶ 54), it was he who sought to "publicize[]" Brown's TRO application by seeking to unseal the parties' filings and keep the courtroom open to the public over Brown's opposition. (*Id.*; *see* ECF 23 at 9.) Belafonte's only response to these non-actionable allegations is to ignore them entirely. But silence is not a defense.

8

Belafonte lacked a reasonable basis to file a Complaint seeking to recover for such statements, *see* Fed. R. Civ. P. 11(b)(2), and Brown never should have had to litigate them.

Finally, Belafonte is wrong that the single-publication rule does not apply to the paperback version of *Brutally Honest*. To support his reading of the rule, Belafonte principally relies on *Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332 (Fla. 3d DCA 2022), a case that Belafonte himself cites as "inapposite" and addressed to a "very different context[]," as well as decisions by "courts in other jurisdictions," only one of which Belafonte cites. (ECF 29 at 5, 11–12.) As previously explained (ECF 23 at 17–18), the paperback version is in substance the same publication as the hardcover, not least because of Belafonte's notable failure to identify any material change to the book's statements about him. Indeed, while Belafonte repeatedly suggests that the paperback version's new chapters alter this calculus, he fails to explain how those chapters amount to a material change of the book's content, let alone claim that the new chapters contain any statements about him. Regardless of the single-publication rule's application here, however, the fact remains that Belafonte's claims, as alleged, are predicated on "many" allegations barred by black-letter law. (ECF 29 at 7.)

### III. BELAFONTE DECLINES TO DEFEND OR WITHDRAW HIS REQUEST FOR AN UNCONSTITUTIONAL AND OVERBROAD PRIOR RESTRAINT

"[T]he chief purpose" of the First Amendment's "guaranty [is] to prevent against previous restraints on publication." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713 (1931). Yet Belafonte unapologetically seeks an injunction that would permanently restrain Brown "from speaking about *Brutally Honest* or Mr. Belafonte in any public appearances or interviews." (ECF 1 ¶ 106d.) Belafonte has not withdrawn and does not defend that glaringly unconstitutional request as he alleged it. Instead, he imagines and then defends only a "narrowly tailored injunction prohibiting speech already found defamatory by the jury." (ECF 29 at 17.) Even that contention

9

is wrong: courts have held that injunctive relief in defamation cases is never constitutional, even "frivolous," and have sanctioned parties who request it. (ECF 23 at 19.) But Belafonte's proposed injunction goes much further than violating that fundamental rule. Belafonte demands that the Court *permanently* enjoin Brown from saying *anything*—not just "speech already found defamatory by the jury"—"about *Brutally Honest* or Mr. Belafonte in any public appearances." (ECF 1 ¶ 106d.) That still-unwithdrawn invitation goes well beyond any defensible view of the First Amendment's requirement that injunctions be "couched in the narrowest terms to accomplish the pin-pointed objective," *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968), which is likely why Belafonte does not defend it. Belafonte's attempt to permanently silence Brown is plainly not "warranted by existing law," Fed. R. Civ. P. 11(b)(2), and amply supports a finding that Belafonte filed this suit "for an[] improper purpose," Fed. R. Civ. P. 11(b)(1). Nor does Belafonte even try to justify his equally unconstitutional attempt to *compel* Brown to speak favorably of him—likewise in violation of the First Amendment. (ECF 1 ¶ 106e.)

      Belafonte attempts to brush all this aside with unexplained suggestions that this is a "case[] of first impression" and that he seeks to "revers[e]" existing law. (ECF 29 at 17.) The First Amendment's prohibition on prior restraints is hardly a matter of first impression. In any event, a request to overturn existing law must be supported by "nonfrivolous argument," Fed. R. Civ. P. 11(b)(2), and Belafonte does not offer a single "argument," let alone a "nonfrivolous argument" for reversing a century of First Amendment law. Indeed, what the Supreme Court said about prior restraints then is equally true of Belafonte's request for one today: such restrictions are "the essence of censorship." *Near*, 283 U.S. at 713.

      For these reasons, the Court should order Belafonte and his counsel to compensate Brown for her attorney's fees in bringing the Motion and defending against this suit.

DATED:  August 30, 2024              Respectfully submitted,

                                          QUINN EMANUEL URQUHART & SULLIVAN LLP

By  */s/ Jason D. Sternberg*
Jason D. Sternberg

William A. Burck (admitted *pro hac vice*)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
1300 I Street, N.W., Suite 900
Washington, D.C. 20005
(202) 538-8334
williamburck@quinnemanuel.com

Jason D. Sternberg (Fla. Bar No. 72887)
David A. Nabors (Fla. Bar No. 1024722)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
jasonsternberg@quinnemanuel.com
davidnabors@quinnemanuel.com
Secondary:  olgagarcia@quinnemanuel.com
(305) 439-5008

*Counsel for Defendant Melanie Brown*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of August, 2024, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

By: */s/ Jason D. Sternberg*
Jason D. Sternberg
Florida Bar No. 72887
jasonsternberg@quinnemanuel.com
