# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:24-cv-22045-GAYLES

STEPHEN BELAFONTE,

      Plaintiff,

v.

MELANIE JANINE BROWN,

      Defendant.

_____/

### DEFENDANT MELANIE BROWN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................3

    A.    The Parties' Background And Marriage .............................................3

    B.    The Parties' Divorce And Later Events ............................................5

    C.    This Lawsuit ....................................................................................7

LEGAL STANDARD ............................................................................................................9

ARGUMENT .........................................................................................................................9

I.      EXERCISING PERSONAL JURISDICTION OVER BROWN WOULD
VIOLATE DUE PROCESS ........................................................................9

II.     THE LIBEL-PROOF PLAINTIFF DOCTRINE BARS THIS SUIT .............15

III.    BELAFONTE CANNOT RECOVER FOR TRUE, TIME-BARRED, OR
OTHERWISE UNACTIONABLE STATEMENTS .......................................17

IV.    BROWN IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER
FLORIDA'S ANTI-SLAPP STATUTE ......................................................20

CONCLUSION ......................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Adkins v. Arvinger,*
2023 WL 9318487 (E.D. Va. Dec. 7, 2023) ........................................................................7

*Advantus, Corp. v. Sandpiper of Cal., Inc.,*
2019 WL 4751725 (M.D. Fla. Sept. 30, 2019) ..................................................................12

*Anderson v. Talentsy, Inc.,*
599 F. Supp. 3d 1207 (M.D. Fla. 2022) ............................................................................14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..............................................................................................9, 12, 19

*Ashraf v. Adventist Health Sys./Sunbelt, Inc.,*
200 So. 3d 173 (Fla. 5th DCA 2016) ................................................................................18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................................................................9

*Bioheart, Inc. v. Peschong,*
2013 WL 1729278 (S.D. Fla. Apr. 22, 2013) ...................................................................14

*Calder v. Jones,*
465 U.S. 783 (1984) ...........................................................................................10, 11, 12, 13

*Cerasani v. Sony Corp.,*
991 F. Supp. 343 (S.D.N.Y. 1998) .................................................................3, 5, 16, 17

*Corsi v. Newsmax Media, Inc.,*
519 F. Supp. 3d 1110 (S.D. Fla. 2021) .............................................................................20

*Cunningham v. Dist. Att'y's Off.,*
592 F.3d 1237 (11th Cir. 2010) ...........................................................................................3

*Davis v. McKenzie,*
2017 WL 8809359 (S.D. Fla. Nov. 3, 2017), *report and recommendation
adopted*, 2018 WL 1813897 (S.D. Fla. Jan. 18, 2019) .................................2, 5, 15, 16, 19, 20

*Demby v. English,*
667 So. 2d 350 (Fla. 1st DCA 1995) .................................................................................19

*Ferenchak v. Zormati,*
572 F. Supp. 3d 1284 (S.D. Fla. 2021) .............................................................................10

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002)................................................................................7, 19

*Jews for Jesus, Inc. v. Rapp*,
    997 So. 2d 1098 (Fla. 2008) ..............................................................................15

*Kennedy v. Se. Newspapers Corp.*,
    2000 WL 33174135 (Ga. Cnty. Ct. Sept. 12, 2000)..............................................17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013)....................................................................... 10, 14

*Mac Isaac v. Twitter, Inc.*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021)...............................................................20

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990)................................................................ 1, 10, 11, 14

*Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*,
    522 F. Supp. 3d 1202 (S.D. Fla. 2021).............................................................9, 13

*Mann v. Palmer*,
    713 F.3d 1306 (11th Cir. 2013)......................................................................13

*McCall v. Zotos*,
    2023 WL 3946827 (11th Cir. June 12, 2023) ..................................1, 10, 11, 12, 13

*Molenda v. Hoechst Celanese Corp.*,
    60 F. Supp. 2d 1294 (S.D. Fla. 1999)................................................................19

*Norkin v. The Fla. Bar*,
    311 F. Supp. 3d 1299 (S.D. Fla. 2018)...............................................................18

*Ray v. Time, Inc.*,
    452 F. Supp. 618 (W.D. Tenn. 1976) ................................................................19

*Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*,
    2017 WL 6390102 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017)....................................20

*Sloan v. Shatner*,
    2018 WL 3769968 (M.D. Fla. June 22, 2018)....................................................19

*Tagliaferri v. Szulik*,
    2016 WL 3023327 (S.D.N.Y. May 25, 2016) ............................................... 15, 16

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009)........................................................................9

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018)..........................................................................................9

*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................ 11, 12, 13

*Wynberg v. Nat'l Enquirer, Inc.*,
   564 F. Supp. 924 (C.D. Cal. 1982)..................................................................................17

## Statutes / Rules

Fed. R. Civ. P. 11.....................................................................................................................8

Fed. R. Evid. 201 .....................................................................................................................3

Fla. Stat. § 768.295 ........................................................................................................... 15, 20

Fla. Stat. § 770.07 ..................................................................................................................18

Fla. Stat. § 95.11(5)(h) ...........................................................................................................18

## Other Authorities

*The Libel-Proof Plaintiff Doctrine*, Note, 98 Harv. L. Rev. 1909, 1917 (1985).......................2, 16

## INTRODUCTION

Plaintiff Stephen Belafonte brought this action to silence his ex-wife using the power of a forum she has virtually no connection to.  Belafonte's initial complaint, filed in May, advanced jurisdictional and merits theories barred by established law.  So Belafonte filed an Amended Complaint.  (ECF 34.)  His new pleading asserts a new claim, a single cause of action for defamation; purports to shore up the initial complaint's deficient jurisdictional allegations; and adds dozens of scandalous (and false) allegations that bear no relevance to Belafonte's sole cause of action in a transparent attempt to assassinate Brown's character and generate media attention.

But the complaint's makeover fails.  Belafonte's Amended Complaint still does not allege a viable basis for exercising personal jurisdiction over Defendant Melanie Brown.  Brown is a citizen of the United Kingdom, not Florida.  Throughout their marriage, the parties resided in California, not Florida.  And Brown's supposedly defamatory statements did not describe events that occurred in Florida.  Belafonte nonetheless contends that personal jurisdiction over Brown exists because she introduced statements into the international stream of commerce with the alleged "knowledge" that those statements would be accessible in Florida and harm Belafonte there.  But that is exactly the set of facts that the Supreme Court and Eleventh Circuit have held does not suffice.  In intentional tort cases like this one, courts may exercise personal jurisdiction over a defendant only when that defendant expressly aimed her statements at the forum—thus making the forum itself "the focal point" of those statements, *McCall v. Zotos*, 2023 WL 3946827, at *5 (11th Cir. June 12, 2023)—or when the defendant "continuously and deliberately" exploited the forum's market, *Madara v. Hall*, 916 F.2d 1510, 1518 (11th Cir. 1990).  Belafonte does not allege that Brown did either.  His Amended Complaint should therefore be dismissed for lack of jurisdiction.

Nor does the Amended Complaint pass scrutiny on the merits.  Stephen Belafonte is an adjudicated domestic batterer and adjudicated thief who claims he was defamed by allegations of domestic abuse and theft.  That—among other things—makes him a quintessential example of a libel-proof plaintiff.  A plaintiff is libel-proof when he "has engaged in criminal or antisocial behavior in the past" and that behavior was "widely reported to the public," so that his "reputation could not therefore have suffered anymore from the publication."  *Davis v. McKenzie*, 2017 WL 8809359, at *16 (S.D. Fla. Nov. 3, 2017) (alterations adopted), *report and recommendation adopted*, 2018 WL 1813897 (S.D. Fla. Jan. 18, 2019).  Belafonte is an oft-convicted criminal with convictions for domestic battery, assault, unlawful taking, and other offenses.  International media sources widely and continually reported Belafonte's history of violence and criminal conduct to the public for a decade before any of the alleged defamatory statements at issue in this case were allegedly published.  And if that were not enough, a majority of the statements Belafonte claims defamed him were published *verbatim* and circulated years before the 2023 and 2024 statements Belafonte sues on here.  Even in Belafonte's own telling, accusations that he abused Brown "exploded" in the international press as early as 2017.  (ECF 34 ¶ 38.)  "[W]ithout damage to reputation, there is no actionable defamation," *The Libel-Proof Plaintiff Doctrine*, Note, 98 Harv. L. Rev. 1909, 1917 (1985), and Belafonte's defamation claim should accordingly be dismissed.

But the Amended Complaint's flaws do not end with the libel-proof plaintiff doctrine.  The vast majority of statements Belafonte seeks to recover for are time-barred.  And Belafonte does not plausibly allege that many of the statements he cites were "of and concerning" him (or in some cases, that they occurred at all).

This meritless SLAPP suit against a foreign defendant does not belong in this Court—or any court.  It should be dismissed, and Brown should be awarded attorney's fees and costs.

2

## BACKGROUND

### A.    The Parties' Background And Marriage

Best known as "Mel B" or "Scary Spice," Brown is a member of the "world-renowned" pop group the Spice Girls, the best-selling female musical group of all-time.  (ECF 34 ¶ 6.)  Brown has also become known for her work to support victims of domestic abuse.  (*Id.* ¶ 166.)  She is a patron of Women's Aid, a nonprofit that promotes equality and the elimination of violence against women.  (*Id.*)  In 2018, Brown was appointed to the Most Excellent Order of the British Empire in recognition of her work to protect vulnerable women, and later received an honorary doctorate from Leeds Beckett University.  (*Id.*)  Brown is a citizen of the United Kingdom.  (*Id.* ¶ 8.)

In 2007, Brown married Stephen Belafonte.  (*Id.* ¶ 18.)  Belafonte was, and remains, a famous television and film producer and director.  (*Id.* ¶ 19.)  Throughout their marriage, Belafonte and Brown resided in Los Angeles, California.  (*Id.* ¶¶ 32–33; *see* ECF 1 ¶ 60.)   In 2014, while the parties remained married, Brown survived a suicide attempt after taking an entire bottle of Aspirin.  (ECF 34 ¶ 25.)

Belafonte has a widely publicized history of violence and criminality.  In 2000, he was arrested for assault and later convicted of vandalism in the Los Angeles County Superior Court.[1] *People v. Belafonte*, No. SA040815 (L.A. Cnty. Sup. Ct. Apr. 26, 2001) (**Ex. A**).  In 2001, Belafonte pleaded guilty to a computer crimes charge in Ocean County, New Jersey.  *State v.*

---

[1]    Brown respectfully requests that the Court take judicial notice of the criminal convictions described in this paragraph under Federal Rule of Evidence 201.  The fact of Belafonte's convictions "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The Eleventh Circuit and other federal courts regularly take notice of a party's criminal convictions, including at the pleading stage.  *See, e.g.*, *Cunningham v. Dist. Att'y's Off.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (taking "judicial notice of the state and federal court proceedings in which [plaintiff] was convicted" at the pleading stage); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 353–54 (S.D.N.Y. 1998) (same in defamation case).  Belafonte was born Stephen Stansbury, but later changed his name.  (*See* Ex. G.)

*Stansbury*, No. 94062127 (N.J. Ocean Cnty. Crim. Ct. Apr. 23, 2001) (**Ex. B**).  In 2003, Belafonte

was convicted of the battery of his then-girlfriend, Nicole Contreras.  *People v. Belafonte*, No.

3HL01349 (L.A. Cnty. Sup. Ct. May 13, 2003) (**Ex. C**); *see infra*, n.2.  Between 1993 and 1994,

Belafonte was arrested on separate occasions and eventually pleaded guilty to simple assault and

unlawful taking in Point Pleasant, New Jersey.  (*See* Ex. D (image of judgment of conviction); Ex.

H.)  In 2007, Belafonte admitted that he beat a mallard to death with a brick.  (*See* Ex. D.)  And in

2010, Belafonte assaulted and battered three men in London.  (*Id.*)

For years, popular media sources around the world have extensively reported Belafonte's

criminal convictions and violent behavior. In 2014, *The Daily Mail* devoted two entire articles to

Belafonte's "chequered" and "unsavoury" history, describing him as "aggressive and with a record

of violence as long as one of his unnaturally rippling arms."  (Ex. D; Ex. H.)



(Ex. D; Ex. H.) Many other notable publications, including *The Sun* and *Cosmopolitan*, reported

on Belafonte's violent history—including his conviction for physically abusing Contreras, public

abuse of animals, and public brawls—years before the allegedly defamatory statements at issue in this action.[2]  (*See* ECF 34 ¶¶ 75–162.)  Popular outlets have also long noted Belafonte's crimes involving misappropriation of property.  (*See* Ex. E.)

### B.    The Parties' Divorce And Later Events

Brown filed for divorce from Belafonte in 2017.  (ECF 34 ¶¶ 5, 33, 50.)  In doing so, Brown applied for, and obtained, a temporary domestic violence restraining order (TRO) against Belafonte.  (*Id.* ¶ 39.)  Belafonte claims that Brown's TRO application accused him of physically abusing her, punching her in the face multiple times, and illegally possessing property.  (*Id.* ¶¶ 34–37.)  Shortly after Brown moved for the TRO, news of her abuse allegations "exploded."  (*Id.* ¶ 38.)  The allegations were widely reported both "in the tabloid press and in the mainstream news media," including in, among other outlets, "TMZ, Page Six, Entertainment Tonight, Daily Mail, The Sun, and Us Weekly."  (*Id.*)  Presumably because recovery for these statements is barred by

---

[2]   *See, e.g.*, Martin Robinson, "The chequered history of Mel B's husband Stephen Belafonte," *The Daily Mail* (Dec. 16, 2014) (**Ex. D**) (describing Belafonte's criminal record and violent history); Catriona Harvey-Jenner, "'I became very good at living a lie': Mel B on how she hid her abusive relationship for so long," *Cosmopolitan* (Dec. 7, 2018) (**Ex. E**) (reporting Belafonte's "uncontested charge of battery against a former partner … and various other convictions for theft and vandalism"); Helen Thomas, "Who is Nicole Contreras?," *The Sun* (Nov. 13, 2017) (**Ex. F**) (reporting conviction for domestic battery of Contreras); Christie D'Zurilla, "Mel B's marriage to Stephen Belafonte unravels in a slew of domestic violence allegations," *L.A. Times* (Apr. 5, 2017) (**Ex. G**) (reporting domestic abuse and battery convictions); Natalie Clarke, "The very unsavoury past of Mel B's husband Stephen Belafonte," *The Daily Mail* (Dec. 20, 2014) (**Ex. H**) (describing Belafonte's long history of violence); "Mel B's former assistant fled in fear of Stephen Belafonte," *Page Six* (Aug. 7, 2017) (**Ex. I**) (noting domestic abuse conviction).

Brown also requests that the Court take judicial notice of the widespread reporting of Belafonte's criminal convictions and violent conduct.  Courts regularly take judicial notice of widespread press coverage in defamation cases, including at the dismissal stage.  *See, e.g.*, *Davis*, 2017 WL 8809359, at *5 (explaining that "[a] court may … take judicial notice of newspapers and other publications for the limited purpose of determining what … the documents contain"); *Cerasani*, 991 F. Supp. at 354 n.3 (noticing widespread media coverage on motion to dismiss defamation case).

(among other things) California's litigation privilege and Florida's two-year statute of limitations, Belafonte now states that he does not seek to recover for them.[3]  (*Id.* ¶¶ 32, 172.)

In 2018, the parties finalized their divorce, and Brown published her memoir, *Brutally Honest*.  (*Id.* ¶¶ 5, 67.)  Belafonte claims that the original 2018 version of Brown's memoir offered "a false narrative" of their marriage (*id.* ¶ 67), and that it "enabled" Brown to profit from defaming Belafonte (*id.* ¶ 68).

The paperback version of *Brutally Honest* was released in 2024.  (*Id.* ¶¶ 88–89.)  Belafonte alleges that 29 statements in *Brutally Honest* defamed him.  (*Id.* ¶¶ 91–151.)  In particular, Belafonte claims that these statements either allege or insinuate that Belafonte physically abused Brown (*e.g.*, *id.* ¶¶ 92, 94, 110, 112, 114, 116, 138); financially abused Brown by controlling her access to and misappropriating the couple's funds (*e.g.*, ¶¶ 100, 120, 124, 132, 146, 148); possessed a gun (*id.* ¶ 118); physically abused the couple's pet dog (*id.* ¶ 132); and pleaded "No Contest" to a battery charge for his beating Contreras (*id.* ¶ 128).

The paperback version's copyright page states that the book's text is copyrighted "Melanie Brown 2018."  (**Ex. J**.)  The paperback version includes three new chapters not included in the original 2018 version.  (ECF 34 ¶ 89.) Belafonte does not allege that the new chapters contain any defamatory statements.  (*Id.*)  That is because they do not.  The vast majority of the statements Belafonte alleges were defamatory come from *Brutally Honest*, and every one of those statements was published verbatim in the 2018 version—years before the two-year limitations period began in May 2022, and years before the release of the paperback version in 2024.  (*Compare* **Ex. K**

---

[3]  That decision represents an about-face from his initial Complaint, which expressly sought to recover for such statements.  (ECF 1 ¶¶ 53–54, 81, 96.)  The same is true of other clearly time-barred allegations that Belafonte asserted as bases for recovery in his initial Complaint.  (*Compare* ECF 1 ¶¶ 58–60, 96, 98 *with* ECF 34 ¶¶ 69–71, 172.)

(identical statements in 2018) *with* ECF 34-6 (2024 version).)[4]  Belafonte also claims that Brown defamed him with similar accusations in television appearances between 2023 and 2024.  (ECF 34 ¶¶ 75–82, 155–62.)  Many of those statements did not mention Belafonte.  (*Id.*)

Belafonte also alleges that recording artist Malu Trevejo sued him for "financial abuse" in 2023.  (*Id.* ¶ 83.)  He alleges "on information and belief" that Brown "reached out to Ms. Trevejo" to accuse Belafonte of financial abuse before Trevejo filed suit.  (*Id.*)  The Amended Complaint supplies no additional detail about, or facts to support, that alleged pre-suit communication.

News of Trevejo's lawsuit then broke on *TMZ*, among other outlets.  (*See id.* ¶ 85.)  Trevejo posted the *TMZ* article reporting the lawsuit on her Instagram story, captioning it, "This man MUST be stopped."  (*Id.*)  Later, Brown reposted Trevejo's Instagram story—making it accessible to all of Brown's followers—and commented, "@malutrevejo your story is my story and I'm STILL living threw it," and, "Abusers won't ever top untill they are STOPPED I'm here standing with you @malutrevejo."[5]  (*Id.* ¶¶ 85–86.)

### C.     This Lawsuit

Belafonte filed this action against Brown on May 29, 2024, asserting three claims, for defamation *per se*, defamation by implication, and intentional infliction of emotional distress.

---

[4]   Belafonte's Amended Complaint references the 2018 version of *Brutally Honest* and alleges that it "enabled" Brown to continue speaking out against Belafonte's abuse.  (ECF ¶¶ 67–68, 89.)  The 2018 version also contains the same statements that Belafonte alleges were defamatory in the paperback version.  *See supra*, pp. 6–7.  Because the 2018 version of *Brutally Honest* is referenced in the Amended Complaint and "central to" Belafonte's claim, the true and correct excerpts from the book attached to this Motion (Ex. K) are incorporated by reference into the Amended Complaint, and the Court may consider them.  *See, e.g.*, *Horsley v. Feldt*, 304 F.3d 1125, 1129, 1134–35 (11th Cir. 2002) (holding that article that reported defendant's allegedly defamatory statements was incorporated by reference into response to complaint).

[5]   "An Instagram Story is a temporary post that is available to an account holder's followers for approximately 24 hours before it is automatically deleted unless made permanent by the user."  *Adkins v. Arvinger*, 2023 WL 9318487, at *6 n.7 (E.D. Va. Dec. 7, 2023).

(ECF 1.)  Brown served on Belafonte, and later filed, a Motion for Sanctions under Federal Rule of Civil Procedure 11.  (ECF 23.)  Belafonte declined to amend his initial Complaint (ECF 1) during the Rule 11(c)(2) safe-harbor period.  Brown then moved to dismiss the initial Complaint. (ECF 31.)  Rather than opposing Brown's motion to dismiss, Belafonte filed an Amended Complaint.  (ECF 34.)

Belafonte's Amended Complaint alleges that the Court may exercise personal jurisdiction over Brown, even though she is a resident and citizen of the United Kingdom.  (*Id.* ¶¶ 8–9, 15.) Belafonte alleges that he moved to Miami in July 2023.  (*Id.* ¶ 10.)  He claims that jurisdiction over Brown is proper because she "maintains regular business contacts within … Florida," of which Belafonte identifies only one—Brown's alleged "partnership" with Zumba Fitness, a business based in Hallandale, Florida—that had nothing to do with the alleged defamation.  (*Id.* ¶ 14.)  Belafonte claims that the statements he alleges defamed him "were published in Florida," that they "were … accessed by Florida residents," that Brown knew they "would be accessed by third parties within … Florida," and that Brown "did not take … steps to limit the dissemination" of her statements to non-Floridians.  (*Id.* ¶¶ 11, 15.)

Belafonte repeats that Brown "made her defamatory statements with the intent to harm" Belafonte's reputation in Florida.  (*Id.* ¶ 10; *see* ¶¶ 11, 15.)  To support that assertion, Belafonte cites Brown's purported pre-suit communication with Trevejo—which Belafonte does not describe and alleges "on information and belief"—because Trevejo, he says, is a Florida resident.  (*Id.* ¶¶ 12, 83.)  Belafonte also alleges that Brown's later repost of Trevejo's Instagram story was "directed … towards Ms. Trevejo in Florida."  (*Id.*)  He does not allege that Brown knew Trevejo is a Florida resident.  Belafonte alleges—also "on information and belief"—that Brown "intended"

her statements to "influence" M.B., the couple's daughter, who resides primarily in Florida.  (*Id.* ¶ 13.)

Belafonte demands damages totaling at least $5 million as well as "[d]eclarative and injunctive relief."  (*Id.* at 53.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement,'" "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."  *Id.* (alteration adopted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).   "[A]llegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the plausibility standard."  *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) (alteration added) (alteration adopted).

To survive dismissal, a complaint must allege "sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

## ARGUMENT

### I.   EXERCISING PERSONAL JURISDICTION OVER BROWN WOULD VIOLATE DUE PROCESS

This case should be dismissed, first and foremost, because the Court lacks personal jurisdiction over Brown.  "[T]he exercise of personal jurisdiction over a defendant must comport with due process."  *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).  To establish specific personal jurisdiction over a nonresident defendant consistently with the Due Process Clause, that defendant must have "'purposefully availed' [her]self of the privilege of

conducting activities within the forum state," *McCall*, 2023 WL 3946827, at *4, and the plaintiff's injuries must "arise out of or relate to" those activities, *Madara*, 916 F.2d at 1516.[6]  "This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts …, or because of the unilateral activity of a third person."  *Id.* (citations omitted).  Even if purposeful availment is present, personal jurisdiction is proper only if its exercise "would comport with 'fair play and substantial justice.'"  *Id.* at 1517.

"In *intentional* tort cases" like this one, "there are two applicable tests for determining whether purposeful availment occurred."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013).  The first is "the 'effects test,' which the Supreme Court articulated in *Calder v. Jones*, 465 U.S. 783 (1984)."  *Louis Vuitton*, 736 F.3d at 1356.  The second is the "traditional minimum contacts test."  *Id.*  Belafonte's allegations do not suffice under either test.

As to the first test, *Calder*'s central premise was that "[t]he mere fact that [a defendant] can 'foresee' that [the statement] will be circulated and have an effect [in the forum] is not sufficient for an assertion of jurisdiction."  465 U.S. at 789.  Accordingly, the Eleventh Circuit recently explained that "[t]he [*Calder* effects] test is met when the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state."  *McCall*, 2023 WL 3946827, at *4.  For a defendant to aim statements at the forum state, she must target the forum itself—not just a forum resident—"as the focal point of the statements." *Id.* at *5.  It is not enough for the defendant to know that the plaintiff resides in the forum, *id.* at

---

[6]  The Amended Complaint does not come close to establishing general personal jurisdiction over Brown.  Brown is not domiciled in Florida, was not served with process in Florida, and has not consented to jurisdiction in Florida.  *See Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1291 (S.D. Fla. 2021) (cataloguing bases for general personal jurisdiction).  Brown's alleged relationship with Zumba Fitness does not change that fact.  *Id.*  It also does not justify specific personal jurisdiction, because—among other reasons—this suit does not "arise out of or relate to" that supposed contact with Florida.  *Madara*, 916 F.2d at 1516.

*5, know that her statements will be "accessible and accessed" in the forum, *id.*, and know that her statements will affect the plaintiff in the forum, *id.*; the defendant must, in addition, "manifest an intent to target and focus on" an audience for her statements in the forum, *id.* at *4.

Belafonte's allegations do not meet that standard. Brown's statements describe events that occurred outside of Florida—predominantly in California. Belafonte does not plausibly allege that Brown's statements "target[ed] and focus[ed] on" a Florida audience or that Florida was "the focal point" of her statements. *Id.* at *4–5. Instead, he alleges that Brown knew he resided in Florida, made statements that "were published" in Florida, and knew her statements "would be accessed" by third parties in Florida. (ECF 34 ¶ 11.) But Brown is no different from the defendant in *McCall v. Zotos*, who also knew the plaintiff resided in Florida, 2023 WL 3946827, at *5, also allegedly knew her statements would be accessed in Florida, *id.* at *4–5, and also allegedly knew that the statements would have an effect in Florida, *id.* at *5.

Belafonte's repeated use of the passive voice underscores the insufficiency of his jurisdictional allegations. Belafonte alleges that Brown's statements "were published in Florida" (not that *Brown* published them there), that those statements "were accessed" by unidentified third parties (not Brown) in Florida, and that Brown knew her statements "would be accessed by third parties" (not Brown) in Florida. (ECF 34 ¶ 11.) Those passive allegations about the actions of third parties do nothing to establish that *Brown* "[her]self … create[d] a 'substantial connection' with the forum state." *Madara*, 916 F.2d at 1516. At most, they speak to "the unilateral activity of … third person[s]." *Id.* That is not enough. *See McCall*, 2023 WL 3946827, at *5. By contending otherwise, Belafonte ignores the distinction between statements that are "expressly aimed" at the forum, on the one hand, and statements that allegedly cause in-forum damage to a forum resident, on the other—precisely the line that *Calder* drew. *See Walden v. Fiore*, 571 U.S.

11

277, 290 (2014) ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum.").

Nor do Belafonte's unadorned allegations that Brown "intended" her statements to cause harm in Florida move the needle.  (ECF 34 ¶¶ 10, 11, 15.)  As the Supreme Court held in *Iqbal*, "bare assertions" of knowledge, intent, and willfulness "are conclusory and not entitled to be assumed true."  *Iqbal*, 556 U.S. at 681; *see also Advantus, Corp. v. Sandpiper of Cal., Inc.*, 2019 WL 4751725, at *24 n.19 (M.D. Fla. Sept. 30, 2019) (recounting how *Iqbal* "reject[ed] 'bare assertions' of knowledge and intent" as conclusory).  That is no less true here.

Vacant allegations of a defendant's intent are especially insufficient in the context of *Calder*'s effects test.  Under that test, the defendant must not only *possess*, but must "*manifest*[,] an intent to target and focus on" the forum.  *McCall*, 2023 WL 3946827, at *4 (emphasis added); *accord Calder*, 465 U.S. at 789 (effects test satisfied when defendant's "actions were *expressly* aimed at" the forum and the forum "is the focal point … of the [publication]" (emphasis added)).  Belafonte does not allege that any of Brown's statements manifested an intent to target or focus on Florida.  The closest he comes is alleging that Brown aimed one—out of forty—of her allegedly defamatory statements at Florida because Brown tagged one alleged Florida resident—Trevejo—on a public Instagram story.  (ECF 34 ¶¶ 12, 85–86.)

That single allegation falls short of the effects test's mark for several reasons.  *First*, Belafonte does not allege that Brown knew Trevejo lived in Florida, and Brown could not have "expressly aimed" her story at Florida if she did not know where the only identifiable Florida resident in her audience resided.  *Second*, the Amended Complaint makes plain that Brown tagged Trevejo on an Instagram story published to *all* of Brown's followers—not just to Trevejo.  The fact that one of Brown's many followers was allegedly a Florida resident does not plausibly

establish that *Florida* was "the focal point" of Brown's Instagram stories, let alone of her memoir or television interviews. *McCall*, 2023 WL 3946827, at *5; *see id.* at *4 ("Posting information on the internet 'is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed.'").[7]  And *third*, the allegation that Brown interacted with a single alleged Florida resident online—in making one out of the forty allegedly defamatory statements identified in the Amended Complaint—establishes at most an "attenuated" connection between Brown and Florida. *Walden*, 571 U.S. at 286.  It certainly does not establish that Brown "'purposefully availed' herself of 'the privilege of conducting activities' within Florida" or of "'invoking the benefit' provided by Florida's laws," *McCall*, 2023 WL 3946827, at *4.

Belafonte's final attempt to manufacture a constitutionally sufficient connection between Brown and Florida comes in the form of two "information and belief" allegations—first, that Brown "repeat[ed]" defamatory statements to Trevejo, and second, that Brown "intended" to influence M.B.  (ECF 34 ¶¶ 12–13, 83.)  But "conclusory allegations made upon information and belief are not entitled to a presumption of truth," particularly when they "do not contain any factual support." *Magnum Constr.*, 522 F. Supp. 3d at 1209 (alteration adopted).  Belafonte alleges no facts to support his information-and-belief contentions, so they "fail to meet the plausibility standard." *Id.* (alteration adopted); *see Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (same).  In any event, Belafonte's ability to identify—at most, and "on information and belief"— two Florida residents whom Brown putatively targeted underscores his suit's incompatibility with due process. *See Walden*, 571 U.S. at 286 (jurisdiction depends on defendant's "own affiliation

---

[7]  In *Calder*, by contrast, the forum *was* the "focal point" of the allegedly defamatory publication because it "was about the plaintiff's activities in" the forum, "was widely circulated" to *hundreds of thousands* of in-forum subscribers, the defendants knew that the publication "had its largest circulation" in the forum, and the defendants relied on in-forum sources. *Walden*, 571 U.S. at 287–88 & n.7 (alteration adopted).

with the State, not … the 'random, fortuitous, or attenuated' contacts [s]he makes by interacting with other persons affiliated with the State").[8]

Belafonte's allegations fare even worse under "the traditional minimum contacts test." *Louis Vuitton*, 736 F.3d at 1356.  Under that test, an intentional-tort defendant purposefully avails herself of the privileges of doing business in the forum only if she "continuously and deliberately exploited the market of the forum."  *Madara*, 916 F.2d at 1518.  Belafonte does not plausibly allege that Brown—as opposed to a third party—"deliberately" exploited the Florida market, let alone that she "continuously *and* deliberately" did so.  *Id.* (emphasis added).  Belafonte effectively admits as much by faulting Brown for not taking active "steps to limit … dissemination or publication … to individuals outside the State of Florida."  (ECF 34 ¶ 15.)  Neglecting to prevent a publication's circulation in the forum is different than—and by definition does not amount to— continuous and *deliberate* exploitation of that forum's market.  Belafonte does not allege that Brown "controll[ed]" the "circulation and distribution" of her statements.  *Madara*, 916 F.2d at 1519.  Her "mere awareness, if [s]he indeed was aware, that … [her statements] might find their way to Florida is not enough to justify the exercise of personal jurisdiction."  *Id.*[9]

Because Belafonte has not alleged a viable basis for personal jurisdiction despite multiple opportunities to do so, his Amended Complaint should be dismissed without leave to amend.

---

[8]  M.B.'s residence in Florida is not enough to support jurisdiction over Brown in any event.  M.B. sometimes resides in Florida only because Belafonte, who has primary custody over her, moved there (ECF 34 ¶¶ 10, 52), and "the 'unilateral activity' of a plaintiff" cannot justify personal jurisdiction.  *Anderson v. Talentsy, Inc.*, 599 F. Supp. 3d 1207, 1216 (M.D. Fla. 2022) (quoting *Walden*, 571 U.S. at 286).

[9]  Even if Belafonte had plausibly alleged purposeful availment, exercising personal jurisdiction over Brown would not comport with traditional notions of fair play and substantial justice.  Forcing Brown to litigate a case from across the Atlantic Ocean would significantly burden Brown, Florida has little interest in adjudicating a dispute over events that occurred primarily in California years ago, and the vast majority of evidence and witnesses are located outside of Florida.  *See Bioheart, Inc. v. Peschong*, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013).

## II.      THE LIBEL-PROOF PLAINTIFF DOCTRINE BARS THIS SUIT

If the Court reaches the merits, it should dismiss the Amended Complaint under the libel-proof plaintiff doctrine.  The doctrine applies when "the plaintiff has engaged in criminal or antisocial behavior in the past" and that behavior was "widely reported to the public" before the alleged defamation, in which case the plaintiff's "reputation could not … have suffered any more from the publication."[10]  *Davis*, 2017 WL 8809359, at *16 (alterations adopted).  Belafonte is just such a plaintiff.

In the seminal decision *Davis v. McKenzie*, Judge Seltzer, sitting in diversity, determined that the libel-proof plaintiff doctrine applies in Florida.  Judge Seltzer cited two principal reasons for that conclusion.  Each was sound.  *First*, Judge Seltzer explained that under Florida law, the "central interest" protected by the defamation cause of action "is the reputation of the plaintiff"; indeed, a statement is not defamatory unless it "tends to harm the <u>reputation</u> of another."  *Id.* (emphasis in original).  That conclusion followed naturally from the Florida Supreme Court's pronouncement that "in defamation cases the interest sought to be protected is the *objective* one of reputation … in the outside world," and that "the nature of the interests to be protected is always a relevant concern in deciding whether to recognize a cause of action" at all.  *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1109 (Fla. 2008) (emphasis in original).  *Second*, Judge Seltzer observed that it is "fundamental" state policy "to spare individuals … the burden and expense of defending meritless defamation claims, particularly as concerns issues of public interest."  *Davis*, 2017 WL 8809359, at *16; *see* Fla. Stat. § 768.295.  On review, Judge Cohn "agree[d] with Judge Seltzer's thorough analysis" and adopted his opinion "in [its] entirety."  *Davis*, 2018 WL 1813897, at *1.

---

[10]     The libel-proof plaintiff doctrine, sometimes interchangeably referred to as the defamation-proof doctrine, applies equally to claims of spoken defamation, or slander.  *See, e.g.*, *Tagliaferri v. Szulik*, 2016 WL 3023327, at *3–4 (S.D.N.Y. May 25, 2016).

Courts, including the court in *Davis*, regularly dispose of libel-proof plaintiffs' defamation claims on motions to dismiss.  *E.g.*, *Tagliaferri v. Szulik*, 2016 WL 3023327, at *3–4 (S.D.N.Y. May 25, 2016); *Davis*, 2017 WL 8809359, at *17; *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354–55, 358 (S.D.N.Y. 1998).   In doing so, courts routinely take judicial notice of the plaintiff's criminal convictions, *e.g.*, *Davis*, 2017 WL 8809359, at *5–6, and of media coverage reporting the plaintiff's previous misconduct, *e.g.*, *id.* at *5; *Cerasani*, 991 F. Supp. 354 n.3.   That approach serves the libel-proof plaintiff doctrine's core purpose of "dispos[ing] of meritless claims at an early stage."  *The Libel-Proof Plaintiff Doctrine*, *supra*, at 1921.

The libel-proof plaintiff doctrine fits Stephen Belafonte like a glove.  Belafonte asserts that Brown defamed him in and after 2023 by accusing him of physical violence, animal abuse, misappropriation of property, and unlawful possession of property.  (ECF 34 ¶¶ 92, 94, 100, 110, 112, 114, 116, 118, 120, 124, 128, 132, 138, 146, 148.)  But for ten years before those statements, international media sources widely reported that Belafonte had committed physical violence, animal abuse, misappropriation of property, and unlawful possession of property.  (*E.g.*, Ex. D; Ex. H.)  Belafonte is an adjudicated domestic batterer and adjudicated assaulter who claims he was defamed by allegations of domestic abuse and physical violence.  (Ex. C; Ex. D.)  He is an adjudicated thief who claims he was defamed by allegations of theft.  (Ex. B; Ex. C; Ex. D.)  He is a widely reported animal abuser who claims he was defamed by allegations of animal abuse. (Ex. D.)  There is no disputing that Belafonte previously engaged in the same types of "criminal or antisocial behavior" that Brown accused him of, or that his misdeeds and violence were "widely reported to the public" before 2023.  *Davis*, 2017 WL 8809359, at *16.  The libel-proof plaintiff doctrine squarely applies to this case and resolves it.

But application of the libel-proof doctrine to Belafonte is clearer still.  Belafonte is the rare libel-proof plaintiff who claims to have been defamed by statements that were published *verbatim* and widely circulated years before the supposed defamation occurred.  The vast majority of the statements Belafonte seeks to recover for were published word-for-word in the 2018 version of *Brutally Honest*.  (*Compare* Ex. K (2018 version) *with* ECF 34-6 (2024 version)); *see Cerasani*, 991 F. Supp. at 354 (plaintiff was libel-proof when previously published book portrayed same events as later film based on same book); *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 929 (C.D. Cal. 1982) (plaintiff was libel-proof because previously published "articles state[d] what" the later-published article "implied").  It is inconceivable that supposed republication of those exact statements six years later harmed Belafonte's reputation further than it had already been harmed.  Belafonte also alleges that Brown accused him of physically abusing her and illegally possessing property in her 2017 divorce filings, and that news coverage of those accusations "exploded."  (ECF 34 ¶ 38; *see id.* ¶ 164 (alleging that Brown has "repeatedly" made the same accusations "over the years since" the parties' divorce).)  The sting of such unactionable accusations is no different from that of the later-made statements Belafonte now sues on.  *See, e.g.*, *Wynberg*, 564 F. Supp. at 929.

"The reputation cannot be said to be injured where it was before destroyed," so a libel-proof plaintiff may not "bring[] an action of damage to a thing which does not exist."  *Kennedy v. Se. Newspapers Corp.*, 2000 WL 33174135, at *5 (Ga. Cnty. Ct. Sept. 12, 2000).  Yet the Amended Complaint seeks to do just that.  It should be dismissed.

## III.   BELAFONTE CANNOT RECOVER FOR TRUE, TIME-BARRED, OR OTHERWISE UNACTIONABLE STATEMENTS

The Amended Complaint should also be dismissed to the extent it demands for relief for statements in *Brutally Honest*.  (*See* ECF 34 ¶¶ 91–151.)  Recovery for those statements is time-

barred.  Florida has a two-year statute of limitations for defamation actions that "begins running from … the date of publication." *Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018); *see* Fla. Stat. § 95.11(5)(h).  Brown published *Brutally Honest* in 2018, and Florida's single-publication statute "provides that a 'cause of action for damages founded upon a single publication … shall be deemed to have accrued at the time of the *first* publication.'" *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 175 (Fla. 5th DCA 2016) (emphasis added); *see* Fla. Stat. § 770.07.  Belafonte did not sue on those statements within two years of *Brutally Honest*'s "first publication," Fla. Stat. § 770.07, so any defamation claim based on those statements is time-barred. To circumvent the single-publication rule, Belafonte cites statements in the paperback version of *Brutally Honest* released in 2024.  (ECF 34 ¶¶ 88–89.)  But every one of those statements was published verbatim in 2018 (Ex. K), and the 2024 version's text is copyrighted "Melanie Brown 2018" (Ex. J), so those statements' "time of *first* publication" was in 2018.  Fla. Stat. § 770.07 (emphasis added).  Although Belafonte alleges that the 2024 version contains "additional material" (ECF 34 ¶ 89), he does not allege that the new material alters the gist of the time-barred 2018 version in any way relevant to him—because it does not.  *See Ashraf*, 200 So. 3d at 174–75 ("subsequent issuance" of allegedly defamatory publication that contained same content "verbatim" as time-barred publication was not actionable under single-publication statute).

Belafonte's claim to recover for certain individual statements should be dismissed for additional reasons.  *First*, he alleges that Brown defamed him by claiming that Belafonte had admitted to beating Contreras and pleaded "No Contest" to a domestic battery charge.  (ECF 34 ¶¶ 128–29.)  But the L.A. County Superior Court determined that Belafonte *did* beat Contreras and adjudicated him guilty of domestic battery (Ex. C), and Belafonte does not dispute that he pleaded "No Contest" to the charge (ECF 34 ¶ 129).  Brown's statement about Contreras is not actionable

because it was at the very least substantially true. *Davis*, 2017 WL 8809359, at \*14; *see also Ray v. Time, Inc.*, 452 F. Supp. 618, 622 (W.D. Tenn. 1976) ("Plaintiff cannot collaterally, by a civil action of libel, attempt to attack the effect of his criminal conviction[.]").

*Second*, Belafonte fails to plausibly allege that a large percentage of the allegedly defamatory statements he cites were "of and concerning" him—a rudimentary element of a defamation claim. *Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294, 1303 (S.D. Fla. 1999). "[N]owhere" in many of those statements was Belafonte "mentioned either by name or ascertainable implication," *Horsley v. Feldt*, 304 F.3d 1125, 1136 (11th Cir. 2002), such as Belafonte's "identifying characteristics," *Sloan v. Shatner*, 2018 WL 3769968, at \*6 (M.D. Fla. June 22, 2018); many such statements conveyed only Brown's subjective feelings or thoughts. (*E.g.*, ECF 34 ¶ 94 ("I can't pretend I'm not living in some twisted, violent hell."); *see also id.* ¶¶ 75, 81, 92, 110, 112, 114, 116, 118, 120, 122, 124, 132, 136, 138, 140, 144, 157, 161.) Belafonte waves away the "of and concerning" requirement by copying and pasting boilerplate allegations that the "context surrounding" Brown's statements suggested "that she was referring to Mr. Belafonte as the cause of her situation" without alleging what that "context" was, and alleging that "*on information and belief*, people who heard [or read] the statements understood she was referring to Mr. Belafonte." (*Id.* (emphasis added).) Such "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not cut it. *Iqbal*, 556 U.S. at 678.

And *third*, Belafonte fails to plausibly allege that Brown defamed him to Trevejo before Trevejo sued him. Just as Belafonte's speculative "information and belief" allegation that such an exchange occurred fails to support jurisdiction, *supra*, p. 13, it also fails to support relief.[11]

---

[11] The Court should also dismiss Belafonte's request for an injunction as unconstitutional. *Demby v. English*, 667 So. 2d 350, 355 (Fla. 1st DCA 1995); (*see* ECF 23 at 18–20 (ECF pagination)).

## IV.   BROWN IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP STATUTE

Section 768.295, Florida Statutes, is "a garden variety fee shifting provision" that mandates an award of attorney's fees and costs when a suit is (1) "without merit" and (2) brought "primarily because" the defendant has exercised her right to speech protected under applicable law. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1127–28 (S.D. Fla. 2021); *see* Fla. Stat. § 768.295(2)(a). This suit satisfies both requirements. *First*, a suit is "without merit" when it, like this one, "fails to state a claim for defamation." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021). *Second*, the speech Belafonte sues on is "free speech in connection with a public issue" because that speech is "protected under applicable law"—including the libel-proof plaintiff doctrine and the statute of limitations, among other things—and occurred in a book and in broadcasts. Fla. Stat. § 768.295(2)(a) (speech protected by anti-SLAPP statute if "protected under applicable law and … made in [a] … television program … [or] book"). The "text of the statute itself" provides that prohibiting meritless lawsuits attacking protected speech "preserves a 'fundamental state policy,'" and an award of fees would thus further "Florida's declared policy of sparing individuals" the burden of lawsuits like Belafonte's. *Davis*, 2017 WL 8809359, at *16. Brown should have never been "dragged through the courts" because of her protected speech, *Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*, 2017 WL 6390102, at *3 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017), and she is accordingly entitled to attorney's fees and costs.

## CONCLUSION

The Complaint should be dismissed without leave to amend, and attorney's fees and costs should be awarded to Brown.

DATED:  November 12, 2024     Respectfully submitted,


QUINN EMANUEL URQUHART & SULLIVAN LLP

By  */s/ Jason D. Sternberg*

Jason D. Sternberg

William A. Burck (*pro hac vice* pending)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
1300 I Street, N.W., Suite 900
Washington, D.C. 20005
(202) 538-8334
williamburck@quinnemanuel.com

Jason D. Sternberg (Fla. Bar No. 72887)
David A. Nabors (Fla. Bar No. 1024722)
**QUINN EMMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
jasonsternberg@quinnemanuel.com
davidnabors@quinnemanuel.com
Secondary:  olgagarcia@quinnemanuel.com
(305) 439-5008

*Counsel for Defendant Melanie Brown*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of November, 2024, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

By:  */s/ Jason D. Sternberg*
Jason D. Sternberg
Florida Bar No. 72887
jasonsternberg@quinnemanuel.com

22