**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:24-cv-22045-GAYLES**

**STEPHEN BELAFONTE,**

**Plaintiff,**

**v.**

**MELANIE JANINE BROWN,**

**Defendant.**
_______________________________/

# ORDER

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"). [ECF No. 64]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is **GRANTED in part**.

## I. BACKGROUND[1]

### A. Factual Background

This case arises out of abuse allegations made by Defendant Melanie J. Brown ("Ms. Brown"), singer from the famed music group "Spice Girls," about her former husband, Plaintiff Stephen Belafonte ("Mr. Belafonte"), a well-known producer and talent manager. Ms. Brown is a resident of the United Kingdom, although she does some work in the United States.[2] Mr. Belafonte

[1] As the Court proceeds on a motion to dismiss, it accepts the allegations in Plaintiff's Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).
[2] Ms. Brown is a co-host of the well-known television show *America's Got Talent*, which is taped in front of a live audience in Pasadena Civic Auditorium. *See* https://www.nbc.com/americas-got-talent (last visited September 9, 2026).

is a Florida resident. The former couple has one daughter together, M.B., who resides with Mr. Belafonte in Florida.

Mr. Belafonte and Ms. Brown began dating in 2006 and were married from June 2007 until August 2018. Mr. Belafonte alleges that, following their divorce, Ms. Brown made 41 defamatory and false statements against him, including that he abused her during their relationship. According to Mr. Belafonte, Ms. Brown made the statements in her memoir, *Brutally Honest*, in her Instagram posts, and in public appearances.[3]

In *Brutally Honest*, originally published in 2018, Ms. Brown wrote that she knew "what it's like to be beaten down . . . punched, humiliated and isolated" and that she "was exhausted . . . by seven years of what felt . . . like constant emotional abuse, mind games, degradation, threats and sexual exploitation." [ECF No. 63 ¶¶ 92, 96]. Ms. Brown wrote that when she met Mr. Belafonte, she "had a house and a loft apartment in Los Angeles and a good career" and when she left him, she "had less than $1,000 in the bank." *Id.* ¶ 148. Mr. Belafonte alleges that Ms. Brown's statements and implications about him were factually inaccurate and demonstrably false. *Id.* ¶ 149.

Around December 2022, Ms. Brown discovered that Malu Trevejo ("Ms. Trevejo"), a Miami-based recording artist previously managed by Mr. Belafonte, was suing Mr. Belafonte for alleged financial abuse. Afterward, Ms. Brown shared TMZ posts discussing Ms. Trevejo's case, which also contained pictures of Mr. Belafonte and Ms. Trevejo on her Instagram stories. Ms. Brown overlaid the posts with supportive messages including, "[t]his man MUST be stopped[,] "@malutrevejo your story is my story and I'm STILL living threw [sic] it[,]" and "@malutrevejo standing up for ALL the women he exploits and STILL abuses, that's me included let's stand strong together and stop his #abuse[.]" *Id.* ¶¶ 85–86.

[3] The Court only provides a sample of the 41 defamatory statements alleged in the Second Amended Complaint.

In January 2023, Ms. Brown embarked on a publicity tour in support of the release of the new edition of *Brutally Honest*, which was published in 2024. *Id.* ¶ 74. The new edition contains the original book's information and additional material. In support of her book, Ms. Brown appeared on popular U.S. television shows including, *LIVE with Kelly and Ryan*, the *Tamron Hall Show*, and CNBC. During these broadcasts, Ms. Brown repeated her abuse allegations about Mr. Belafonte. For example, during a January 18, 2023 appearance on *LIVE with Kelly and Ryan*, Ms. Brown stated, "put aside . . . the physical abuse, the coercive control, the financial control, I was left just in bits and pieces." *Id.* ¶ 75. On March 26, 2024, while appearing on the *Tamron Hall Show*, Ms. Brown said, "I was not only abused on different levels, but also financially abused[.]" *Id.* ¶ 155. On August 30, 2024, in an interview with *CNBC Conversation*, Ms. Brown stated, "I've been abused on every single level." *Id.* ¶ 161.

According to Mr. Belafonte, Ms. Brown raised these allegations with full knowledge that he was living in Florida and that her statements would reach Florida residents and eventually harm his reputation within the state. As a result, Mr. Belafonte lost business deals, management opportunities, and personal relationships, including straining his relationship with his daughter, M.B., in the state.

B. Procedural History

On February 14, 2025, Mr. Belafonte filed his Second Amended Complaint ("SAC") alleging one count of defamation against Ms. Brown.[4] [ECF No. 63]. On February 18, 2025, Ms. Brown moved to dismiss the SAC because (1) exercising personal jurisdiction over her would

[4] On May 29, 2024, Mr. Belafonte filed this action against Ms. Brown. [ECF No. 1]. On September 27, 2024, Ms. Brown moved to dismiss the Original Complaint. [ECF No. 31]. On October 18, 2024, Mr. Belafonte filed his First Amended Complaint, [ECF No. 34]; and on October 21, 2024, the Court denied Ms. Brown's Motion to Dismiss as moot, [ECF No. 39]. On November 12, 2024, Ms. Brown moved to dismiss the First Amended Complaint. [ECF No. 49]. On January 24, 2025, Mr. Belafonte moved for leave to supplement his First Amended Complaint. [ECF No. 53]. On February 7, 2025, the Court granted Mr. Belafonte leave to file a Second Amended Complaint, [ECF No. 58], and denied Ms. Brown's Motion to Dismiss as moot, [ECF No. 59].

violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; (2) the libel-proof doctrine bars Mr. Belafonte's suit; and (3) Mr. Belafonte's claim is time barred or is otherwise unactionable. [ECF No. 64]. In her Motion, Ms. Brown also seeks attorney's fees and costs under Florida's Anti-SLAPP statute, Florida Statute § 768.295(2)(a). *Id.*

In Mr. Belafonte's Opposition to the Motion ("Opposition"), filed on March 4, 2025, he argued that (1) the Court has jurisdiction over Ms. Brown because her claims arise from her tortious actions in Florida; (2) Mr. Belafonte was not libel-proof; (3) and Ms. Brown's remaining arguments for dismissal were meritless. [ECF No. 68]. In the Opposition and his supporting Declaration, Mr. Belafonte noted that Ms. Brown travels to the United States frequently and has visited Florida to see their daughter. *Id.* at 16; [ECF No. 68-1 ¶ 5]. In her Reply in support of her Motion, filed a week later, Ms. Brown reiterated her arguments why the case should be dismissed. [ECF No. 69].

The Court held a hearing on the Motion on November 18, 2025. [ECF No. 86]. At the hearing, the Court heard arguments regarding whether personal jurisdiction was proper in Florida and the applicability of the libel-proof doctrine to this action. Ms. Brown's counsel argued that personal jurisdiction was improper in Florida because the alleged events giving rise to the suit took place in California and the only connection to Florida was that Mr. Belafonte moved to the state in 2023. [ECF No. 93 at 4]. According to Ms. Brown's counsel, jurisdiction is proper in the United Kingdom, where Ms. Brown is a resident. [ECF No. 93 at 24]. Mr. Belafonte's counsel, relying on cases within this Circuit, responded that personal jurisdiction must be proper in Florida given that Ms. Brown aimed her statements at Mr. Belafonte, a Florida resident, who suffered injury from her statements here.

The Court held a second hearing on June 16, 2026, where the Court heard arguments regarding (1) the applicability of *Keeton v. Hustler Mag.*, 465 U.S. 770 (1984), to the facts here; (2) the amount of Ms. Brown's book sales in Florida; and (3) whether personal jurisdiction was proper in California. [ECF No. 92]. At the hearing, Ms. Brown's counsel acknowledged that a small number of copies of *Brutally Honest* were sold in Florida and that the alleged events giving rise to the suit took place in the United States. [ECF No. 94]. Like the first hearing, Ms. Brown's counsel argued that personal jurisdiction for Mr. Belafonte's claims is only proper in the United Kingdom.[5] *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a claim against her for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "A party may challenge personal jurisdiction on either facial or factual grounds. A facial attack requires the court to examine whether the plaintiff has sufficiently alleged a basis for personal jurisdiction in the complaint, and the allegations in the complaint are taken as true for the purpose of the motion. A factual attack challenges the existence of jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Black v. Madderom*, No. 3:22-CV-19 (CAR), 2022 WL 3758234, at *1 (M.D. Ga. Aug. 30, 2022). Here, Ms. Brown raises a facial challenge to Mr. Belafonte's basis for personal jurisdiction.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When the defendant

[5] A dubious position if the events at issue in the defamatory allegations are centered in a U.S. state, like California.

submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff[,]" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir.2002)), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514.

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must determine whether the exercise of jurisdiction is appropriate under Florida Statute § 48.193, Florida's long-arm statute. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626–27 (11th Cir.1996). Second, the court must determine whether exercising personal jurisdiction over the nonresident defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). That is, the court must determine whether the nonresident defendant has such minimum contacts with the forum such that exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*

## III. ANALYSIS

Ms. Brown does not contest that jurisdiction is appropriate under Florida's Long-Arm Statute, so the Court moves directly to assessing whether exercising jurisdiction over Ms. Brown comports with the Due Process Clause. *See* [ECF No. 64].

A. Due Process Considerations

"The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotation omitted). Accordingly, to satisfy the due process clause, a nonresident defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "In specific personal jurisdiction cases, [courts] apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant 'purposefully availed' [her]self of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *5 (S.D. Fla. Oct. 16, 2017) (quoting *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355). The Court addresses each prong below.

1. Relatedness

"For specific personal jurisdiction, a plaintiff's claim must 'arise out of or relate to at least one of the defendant's contacts with the forum.'" *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1372 (S.D. Fla. 2019) (quoting *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355). A defamation claim arises out of a defendant's contacts with Florida when the defendant publishes allegedly defamatory material in Florida that is accessed by third parties, excluding the plaintiff and his agents, in the state. *See id. at* 1372–73; *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149,

1156–57 (S.D. Fla. 2017) ("Because there is no dispute that the [] website and the [] mobile application are accessible in Florida, the Article was accessible in Florida, and the Article was, in fact, accessed in Florida, . . . Defendants have committed a tort in Florida for purposes of the jurisdictional analysis."). The SAC alleges that Ms. Brown's statements were published in Florida and accessed by third parties in Florida. Therefore, the first prong is satisfied.

2. Purposeful Availment

For intentional torts, there are "two applicable tests [that] can determine whether purposeful availment occurred: the effects test and the traditional minimum-contacts test." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023); *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356. Mr. Belafonte relies solely upon the effects test, so the Court limits its analysis to that test. To satisfy the effects test, a plaintiff must show that the defendant's tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008). The non-resident defendant must "manifest an intent to target and focus on [Florida]" residents, *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023) (internal quotation omitted), or "deliberately direct[] [her] posting at the plaintiff or at an audience in the forum state[.]" *Moore v. Cecil,* 109 F.4th 1352, 1364 (11th Cir. 2024).

Courts have found purposeful availment when a defendant tagged the plaintiff and the plaintiff's employer in a defamatory post, sent mass emails to forum residents to defame the plaintiff's business and generate a boycott, or posted the plaintiff's address and urged people to harass the plaintiff. *See id*. "Mere injury to a forum resident," however, *Walden v. Fiore*, 571 U.S. 277, 290 (2014), or simply knowing "that the effects of defendant's conduct would be felt in the forum state, without more[,]" *Moore*, 109 F.4th at 1363–64, are insufficient to exercise specific

personal jurisdiction over a nonresident defendant. Also, posting defamatory statements to one's general social media audience, rather than specifically targeting forum residents, does not establish purposeful availment. *See id*. at 1364.

Ms. Brown argues that the "effects test" is not met because the "focal point" of her statements was not Florida and most of her statements involve events in California. She contends that, under Eleventh Circuit precedent, her mere knowledge that Mr. Belafonte lived in Florida and that Florida residents would access her statements is insufficient to establish purposeful availment. According to Ms. Brown, her statements were directed at international and national audiences rather than Florida, in particular. She notes that the only instance in which she potentially targeted Florida is when she tagged Ms. Trevejo, a Florida resident, in a supportive post. Ms. Brown argues that the post is insufficient to establish personal jurisdiction in Florida because she did not know where Ms. Trevejo lived when she made her supportive posts; she did not limit her post to her Florida followers; and her interaction with a single Florida resident, regarding Mr. Belafonte's abuse, is too attenuated to establish personal jurisdiction.

Mr. Belafonte responds that Ms. Brown is subject to personal jurisdiction because she intentionally sold her defamatory book, *Brutally Honest*, in Florida regarding Mr. Belafonte, a Florida resident. Mr. Belafonte argues that Ms. Brown reiterated those statements on television programs and Instagram with the intent that they would be accessed by Florida audiences in order to harm Mr. Belafonte's business, personal contacts, and his relationship with this daughter, M.B., in Florida. And Mr. Belafonte maintains that his business, personal relationships, and his relationship with his daughter were in fact harmed by Ms. Brown's actions.

The Court finds that Mr. Belafonte fails to sufficiently allege that Ms. Brown purposefully availed herself of the privileges of Florida. Based on the allegations in the SAC, the Court cannot

find that Ms. Brown "manifest[ed] an intent to target and focus on [Florida]" residents, *McCall*, 2023 WL 3946827, at *4, or direct her allegations towards Mr. Belafonte in Florida. *See Moore*, 109 F.4th at 1364. Importantly, Ms. Brown made statements nationally and internationally through her memoir, public appearances, and social media. There are no allegations that she promoted her book within Florida or that she made defamatory statements while in Florida. While Ms. Brown's statements may have harmed Mr. Belafonte in Florida, a "mere injury to a forum resident" is insufficient to exercise specific personal judication over a nonresident defendant. *Walden*, 571 U.S. at 290. This is true even if Ms. Brown knew her allegations would reach Mr. Belafonte or Florida residents. *See Moore,* 109 F.4th at 1363–64.

Ms. Brown's conduct, alleging that Mr. Belafonte abused her, is not analogous to conduct deemed sufficient to establish purposeful availment in this jurisdiction. The SAC does not sufficiently allege that Ms. Brown tagged Mr. Belafonte and his employer in a defamatory post, *see id.* at 1364; that she sent defamatory correspondence to Florida residents to harm Mr. Belafonte's business, *id*.; or that she urged her followers to harass Mr. Belafonte, *id*. Nor do Ms. Brown's posts to her general social media audience supporting Ms. Trevejo establish purposeful availment. *See id*. (finding that posting defamatory statements to all of one's social media followers or a national audience does not indicate purposeful availment of the forum state). Furthermore, Mr. Belafonte does not claim that Ms. Brown was aware of Ms. Trevejo's Florida residency when she made her posts, further undermining Mr. Belafonte's purposeful availment contention.

Finally, this case is distinguishable from the cases Mr. Belafonte cites to support exercising specific jurisdiction over Ms. Brown. In *Calder v. Jones*, the Supreme Court upheld exercising personal jurisdiction over non-resident writers because their sources were from the forum state and

the defamatory articles were published in a newspaper with its largest circulation there. 465 U.S. 783 (1984). In contrast, Mr. Belafonte does not allege that Ms. Brown used Florida sources[6] or that her allegations were broadcast in a medium with its largest circulation in Florida. This case is also dissimilar from the remaining cases cited by Mr. Belafonte because the central events here are not alleged to have occurred in Florida and Ms. Brown did not directly attempt to harm Mr. Belafonte in Florida. *See Zimmerman v. Buttigieg*, 576 F. Supp. 3d 1082, 1095–96 (M.D. Fla. 2021) (finding that exercising jurisdiction over non-resident defendant was proper given that the central event took place in Florida); *New Lenox Industries v. Fenton*, 510 F. Supp. 2d 893, 898, 904 (M.D. Fla. 2007) (adopting report and recommendation which found that granting personal jurisdiction was proper where central events took place in Florida); *Kamau v. Slate*, No. 4:11CV522-RH/CAS, 2012 WL 5390001, at *2–*5 (N.D. Fla. Oct. 1, 2012), *report and recommendation adopted*, No. 4:11CV522-RH/CAS, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012) (determining that the district court could properly exercise jurisdiction over some defendants, under less stringent standards for *pro se* plaintiffs, because those defendants were involved in posting and sending defamatory material with the purpose of harming Florida residents); *Silver v. Levinson*, 648 So. 2d 240 (Fla. Dist. Ct. App. 1994) (affirming trial court's decision to exercise jurisdiction over nonresident defendant where defendant mailed defamatory letters to Florida residents about the plaintiff); *Hugel v. McNell*, 886 F.2d 1, 5 (1st Cir. 1989) (finding personal jurisdiction where defendants named plaintiff and provided allegedly libelous information to a newspaper with the intention of harming plaintiff in the forum).[7] In light of the Eleventh Circuit's recent decisions in *McCall* and *Moore*, Mr. Belafonte cannot establish that Ms. Brown

[6] Excluding Ms. Trevejo who Ms. Brown is not alleged to have known was a Florida resident.
[7] In addition, most of Mr. Belafonte's cases predate the Eleventh Circuit's seminal decision regarding the exercise of personal jurisdiction over non-resident defendants in defamation actions. *Compare Moore with e.g., Zimmerman*; *New Lenox Industries*. Thus, the Court cannot assume that these courts would reach the same decision today.

purposefully availed herself of the privileges of Florida such that she should be subject to the jurisdiction of its courts.[8]

3. Traditional notions of fair play and substantial justice

Because the SAC insufficiently alleges that Ms. Brown purposefully availed herself of the forum state, the Court finds that it would offend traditional notions of fair play and substantial justice to subject Ms. Brown to personal jurisdiction in Florida. *Oliver v. McLane, Bednarski, & Litt, L.L.P.*, No. CV 423-178, 2024 WL 1141743, at *6 (S.D. Ga. Mar. 15, 2024) ("The Court finds exercising jurisdiction over Defendants would offend the traditional notions of fairness and substantial justice because, as outlined above, Defendants did not purposely avail themselves to the state of Georgia."). Thus, the SAC must be dismissed.[9]

B. Attorney's Fees and Costs under Florida's Anti-SLAPP Statute

In her Motion, Ms. Brown argues that she is entitled an award of attorney's fees and costs under Florida's Anti-SLAPP statute. Fla. Stat. § 768.295. "Florida's anti-SLAPP statute prohibits a person from filing a cause of action against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (internal quotation omitted). The Court, however, cannot award attorney's fees or costs because the statute requires the suit to be "without merit[,]" and the Court has not assessed the merits of Mr. Belafonte's claim. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (noting that "dismiss[al] on non-merits grounds such as personal jurisdiction . . . deny[] audience to a case

[8] Specific personal jurisdiction is founded upon alleged facts that relate to the underlying claim. *See Empirical Regent, LLC v. Sunny Design and Bus. Consulting, LLC*, No. 1:19-CV-3253-MHC, 2020 WL 4557564, at *4 (N.D. Ga. Feb. 25, 2020). Thus, Ms. Brown's relationship with Zumba Fitness does not change the Court's conclusion because it does not relate to the defamation suit. Furthermore, Mr. Belafonte does not allege that the Court can exercise general personal jurisdiction over Ms. Brown based upon her relationship with Zumba Fitness.
[9] Based on this finding, the Court does not address Ms. Brown's alternative arguments for dismissal.

on the merits") (internal quotation marks and citation omitted); *cf. Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984) ("Since the court lacked subject matter jurisdiction over the action, it had no power to render a judgment on the merits."). Even so, Mr. Belafonte may be able to establish personal jurisdiction over Ms. Brown in a well-pleaded Complaint. Consequently, Ms. Brown's request is denied.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Ms. Brown's Motion, [ECF No. 64], is **GRANTED in part and DENIED in part**.

2. Mr. Belafonte's Complaint is **DISMISSED** without prejudice.[10]

3. Mr. Belafonte shall have twenty (20) days from the date of this Order to file a Third Amended Complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of September, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

[10] In a footnote within Mr. Belafonte's Opposition to Ms. Brown's Motion, Mr. Belafonte requests limited personal jurisdiction discovery if the Court grants Ms. Brown's Motion. [ECF No. 68 n.2]. Mr. Belafonte states that "additional discovery would allow Mr. Belafonte to identify additional contacts Ms. Brown has with the state of Florida and learn further details of the context surrounding the defamatory statements she made." *Id*. The Court denies Mr. Belafonte's request as improperly pled. *See Moore Oil Co., Inc. v. D&D Oil Co., Inc.*, No. 2:07-CV-01475-JEO, 2008 WL 11376611, at *5 (N.D. Ala. Feb. 22, 2008) ("While discovery on the question of personal jurisdiction is sometimes appropriate when there is a motion to dismiss for lack of jurisdiction, plaintiffs must first make a threshold showing that there is some basis for the assertion of jurisdiction.") (internal quotation omitted). As Mr. Belafonte has not made the threshold showing through a proper motion, his request is denied.